KROPF v CITY OF STERLING HEIGHTS

OPINION OF THE COURT

1. ZONING—REASONABLENESS—PRESENT CONDITIONS—FUTURE CONDITIONS—COURTS—MUNICIPAL CORPORATIONS—ORDINANCES.

Zoning, to be valid, must be reasonable, and its reasonableness must be measured by present conditions; the test of validity is not whether the prohibition may at some time in the future bear a real and substantial relationship to the public health, safety, morals or general welfare, but whether it does so now; a court is not required to close its eyes to developments or improvements within a municipality which are imminent or a factual certainty and the measure of such consideration must be the certainty or speculative nature of the "future conditions" which the municipality asserts will render its ordinance reasonable and proper; furthermore, a court must be sensitive to the harm which might befall the community in the future if the use proposed by the property owner is permitted because circumstances do not yet justify the prohibition.

2. ZONING—CONSTITUTIONAL LAW—PURCHASER OF PROPERTY—ORDINANCES.

One who purchases with knowledge of zoning restrictions may

REFERENCES FOR POINTS IN HEADNOTES
[1, 9, 11–13, 26, 27] 58 Am Jur, Zoning §§ 21, 22.
[2, 4–6, 25] 58 Am Jur, Zoning § 14 *et seq.*
[3] 5 Am Jur 2d, Appeal and Error § 822.
[7] 58 Am Jur, Zoning § 19.
[8] 58 Am Jur Zoning §§ 14, 18.
[10, 17] 58 Am Jur, Zoning § 39.
[14] 20 Am Jur 2d, Courts §§ 66, 80.
[15] 58 Am Jur, Zoning §§ 223, 256.
[16] 27 Am Jur 2d, Equity §§ 177–267.
[18] 58 Am Jur, Zoning § 58.
[19] 58 Am Jur, Zoning § 178 *et seq.*
[20] 16 Am Jur 2d, Constitutional Law §§ 10, 210–215, 393.
[21] 16 Am Jur 2d, Constitutional Law §§ 225, 226.
[22, 23] 2 Am Jur 2d, Administrative Law §§ 400, 401.
[24] 58 Am Jur, Zoning § 229.

nonetheless be heard to challenge the restrictions' constitutionality; an otherwise unconstitutional ordinance does not lose this character and immunize itself from attack simply by the transfer of property from one owner to another.

3. APPEAL AND ERROR—EQUITY—CHANCERY CASES—DE NOVO REVIEW.

Michigan Supreme Court reviews *de novo* the record on appeal in chancery cases.

4. ZONING—ORDINANCES—TOTAL EXCLUDED USE—CONSTITUTIONAL LAW—DISCRIMINATION—EQUAL PROTECTION.

An ordinance which, on its face, *totally* excludes from a municipality a use recognized by the constitution or other laws of Michigan as legitimate also carries with it a strong taint of unlawful discrimination and a denial of equal protection of the law as to the excluded use; such a taint can hardly be presumed to be present when the general use is reasonably permitted in the community and the only issue is whether it was arbitrarily or capriciously denied as to a particular parcel of land.

5. ZONING—ORDINANCES—PRESUMPTIONS—REASONABLENESS—COURTS —CONSTITUTIONAL LAW—EVIDENCE—SINGLE RESIDENCES.

The presumption is in favor of the validity of an ordinance, while it must stand the test of reasonableness, courts may not invalidate ordinances unless the constitutional objections thereto are supported by competent evidence or appear on their face; invalidity does not appear on the face of a zoning ordinance merely from its classification of certain property for use for single residences only.

6. ZONING—BURDEN OF PROOF—CONSTITUTIONAL LAW—ORDINANCES— DUE PROCESS—EQUAL PROTECTION—DEPRIVATION OF PROPERTY —JUST COMPENSATION—OVERRULED CASES.

Plaintiffs must bear the burden of proof in attacking the constitutionality of a zoning ordinance; it is up to them to present sufficient proofs to the court showing that the defendant city by its action violated one of their constitutional rights and thus acted "unreasonably"; they must show that the city, via its ordinance denied them substantive or procedural due process, equal protection of the laws, or deprived them of their property without just compensation; insofar as decisions of the Court of Appeals are based solely on the concept of "favored or preferred use" and attendant shifting of burden of proof, including *Bristow v City of Woodhaven,* 35 Mich App 205 (1971), and

*Simmons v Royal Oak,* 38 Mich App 496 (1972), they are overruled.

7. ZONING—ORDINANCES—MUNICIPAL CORPORATIONS—DUE PROCESS.

A plaintiff-citizen may be denied substantive due process by a city or municipality by the enactment of legislation, such a zoning ordinance, which has, in the final analysis, no reasonable basis for its very existence.

8. ZONING—ORDINANCES—MUNICIPAL CORPORATIONS—STATES—POLICE POWERS.

The power of a city to enact ordinances is not absolute; it has been given power by the State of Michigan to zone and regulate land use within its boundaries so that the inherent police powers of the state may be more effectively implemented on the local level but the state cannot confer upon the local unit of government that which it does not have; for the state itself to legislate in a manner that affects the individual right of its citizens, the state must show that it has a sufficient interest in protecting or implementing the common good, via its police powers, that such private interests must give way to this higher interest.

9. ZONING—ORDINANCES—FIRST AMENDMENT—REASONABLENESS—PRESUMPTIONS—BURDEN OF PROOF.

Michigan Supreme Court requires the state to justify its legislation by a "compelling" state interest when First Amendment rights are being restricted; with regard to zoning ordinances, it only asks that they be "reasonable" and they are presumed to be so until the plaintiff shows differently (US Const, Am I).

10. ZONING—SINGLE-FAMILY RESIDENCES—SUPREME COURT—PROOFS—REASONABLENESS.

Michigan Supreme Court cannot find that a city was unreasonable in zoning land for single-family residences where the plaintiffs presented little proof directly relating to the issue of the reasonableness of the single-family residential classification itself, they do point out the adverse influences of a sewage treatment plant and the particular characteristics of the property itself, they make no argument that the land is improperly reserved for human habitation, they acknowledge that the particular characteristics of the property, to wit, the low swampy areas, are unsuitable for any use regardless of what the zoning is, and in fact, the total proofs they present put forward the proposition that a greater number of people should

reside on the land and make it their home rather than just a few.

11. ZONING—ARBITRARINESS—CAPRICIOUSNESS.

To show arbitrariness and capriciousness on the part of a city in zoning land, plaintiffs must show that it did not act for rational reasons or any other valid reasons, or that no such grounds reasonably exist with respect to the parcel of land owned by plaintiffs.

12. ZONING—SUPREME COURT—ARBITRARINESS—CAPRICIOUSNESS—SINGLE-FAMILY RESIDENCES.

It is not for the Michigan Supreme Court to second guess the local governing bodies in the absence of a showing that that body was arbitrary or capricious in its exclusion of other uses from a single-family residential district.

13. ZONING—SUPREME COURT—ORDINANCES—ARBITRARINESS—UNREASONABLENESS.

The Michigan Supreme Court does not sit as a superzoning commission; it is not the Court's function to approve a zoning ordinance as to wisdom or desirability, for alleged abuses involving such factors the remedy is the ballot box, not the courts; unless it can be shown that a city council acted arbitrarily or unreasonably, its determination is final and conclusive and no court may alter or modify the ordinance as adopted.

14. COURTS—STATUTES—ORDINANCES—VALIDITY.

While it is within the province of the courts to pass upon the validity of statutes and ordinances, courts may not legislate nor undertake to compel legislative bodies to do so one way or another.

15. ZONING—ORDINANCES—PROOFS.

To sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adopted.

16. APPEAL AND ERROR—EQUITY—SUPREME COURT—FINDING OF TRIAL JUDGE—WITNESSES—CREDIBILITY.

Michigan Supreme Court is inclined to give considerable weight to the findings of the trial judge in equity cases primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity; it does not ordinarily disturb the findings of

the trial judge in an equity case, unless, after an examination of the entire record, it reaches the conclusion it would have arrived at a different result had it been in the position of the trial judge.

17. A<small>PPEAL AND</small> E<small>RROR</small>—E<small>QUITY</small>—Z<small>ONING</small>—S<small>INGLE-FAMILY RESI-</small>
   <small>DENCES</small>—F<small>INDINGS OF</small> F<small>ACTS</small>—S<small>UPREME</small> C<small>OURT</small>.

   A review of the record *in toto* of an equity case claiming that a city's zoning ordinance is unreasonable, arbitrary or capricious as applied to plaintiffs' property reveals that the circuit judge, acting as a trier of fact, could reasonably have reached conclusions that the testimony of plaintiffs' witnesses should not be afforded as much weight as that introduced on behalf of the city and that plaintiffs' property was suitable for, could be developed for, and was salable when used for single-family residential purposes, the conclusions are supported by the record, and the Michigan Supreme Court would not have reached a different conclusion were it the trial court.

O<small>PINION</small> C<small>ONCURRING IN</small> R<small>EVERSAL</small>

T. G. K<small>AVANAGH</small> and L<small>EVIN</small>, JJ.

18. Z<small>ONING</small>—L<small>EGISLATIVE</small> A<small>CTION</small>—C<small>ONSTITUTIONAL</small> L<small>AW</small>—R<small>EASONA-</small>
   <small>BLENESS</small>.

   *Much of the law of zoning is premised on the assumption that zoning decisions of the local legislative body necessarily represent legislative action and on that premise, the courts require a property owner dissatisfied with a zoning use restriction to prove that the "legislation" is irrational—the burden generally imposed when an act of the Legislature is attacked as unconstitutional; that approach is sound if maintenance of a use restriction truly reflects legislative action; the courts may then properly require a person attacking the restriction to prove that no use permitted is reasonable.*

19. Z<small>ONING</small>—U<small>SE</small> R<small>ESTRICTIONS</small>—R<small>EASONABLENESS</small>—A<small>DMINISTRATIVE</small>
   L<small>AW</small>.

   *The guideline, where maintenance of a use restriction reflects administrative, not legislative, action, ought to be that generally followed by zoning authorities in granting or denying applications for a change in a use restriction as it affects particular property—the reasonableness of the proposed use.*

20. C<small>ONSTITUTIONAL</small> L<small>AW</small>—S<small>EPARATION OF</small> P<small>OWERS</small>—A<small>DMINISTRATIVE</small>
   L<small>AW</small>—L<small>OCAL</small> L<small>EGISLATIVE</small> B<small>ODY</small>.

   *The doctrine of separation of powers, a restriction on the exercise*

*by one of the three major branches of state government of powers belonging to another, does not bar .the exercise of administrative power by a* local *legislative body.*

21. CONSTITUTIONAL LAW—LEGISLATIVE ACTION—HEARING—JUDICIAL REVIEW—DUE PROCESS.

   *A local governmental authority can act without a hearing and judicial review is limited to an inquiry whether the action is irrational (and thus a denial of substantive due process) or violates some other constitutional limitation when official action is legislative.*

22. ADMINISTRATIVE LAW—HEARING—JUDICIAL REVIEW—CONSTITUTIONAL LAW—EVIDENCE.

   *There must be a hearing when official action of a local legislative body is based on individual grounds—when administrative—and the inquiry on review, under the Michigan Constitution, is whether the decision is supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28).*

23. ZONING—ADMINISTRATIVE LAW—JUDICIAL REVIEW—CONSTITUTIONAL LAW—REASONABLENESS—EVIDENCE.

   *Determination to grant or deny a change in zoning by a local legislative body on individual grounds is administrative, not legislative; it is quasi-judicial and affects private rights and is subject to direct review by the courts; the merits, the reasonableness of the proposed use—the standard in fact generally followed by a local legislative body when granting or refusing a change—is, under the Michigan Constitution, subject to judicial review and the question on review is whether the grant or denial is supported by competent, material and substantial evidence on the whole record (Const 1963, art 6, § 28).*

24. ZONING—LEGISLATIVE ACTION—JUDICIAL REVIEW—VARIANCES—CONSTITUTIONAL LAW—EVIDENCE—PRESUMPTIONS.

   *Zoning is legislative when in fact the legislative body adopts on general, not individualized, grounds a plan of general application to all the land in the community and stops there, with variances granted only when constitutional necessity requires it, and there are no determinations on individual grounds subject to judicial review in accordance with the standard prescribed in the Michigan Constitution that the decision be supported by competent, material and substantial evidence on the whole record and the zoning choices of the legislative body*

are clothed with a presumption of constitutionality (Const 1963, art 6, § 28).

25. ZONING—VARIANCES—ADMINISTRATIVE LAW—PRESUMPTIONS—
LEGISLATIVE ACTION—ORDINANCES—EVIDENCE—HEARING—JU-
DICIAL REVIEW—CONSTITUTIONAL LAW—REASONABLENESS.

Local zoning authorities that act on individual not general grounds, that entertain applications for and grant changes in their zoning ordinances and maps, spot zone, approve and refuse planned unit developments, make exceptions and allow variances effecting a change in zoning without a showing of constitutional necessity, are exercising administrative not legislative power and cannot claim for such determinations the presumption of constitutionality which shields legislative action; the proceedings based on individual grounds are quasi-judicial, the local authority must grant a hearing, the determinations of the local authority must be based on evidence, and the determination, granting or denying alike, is subject to judicial review on the record made at the hearing in accordance with the standard prescribed in the Michigan Constitution that the decision be supported by competent, material and substantial evidence on the whole record; no constitutional question is presented, the issue on review is whether the proposed use is reasonable (Const 1963, art 6, § 28).

26. ZONING—ORDINANCES—REASONABLENESS—BURDEN OF PROOF.

A property owner seeking a change in the use permitted by a zoning ordinance has the burden of establishing that the use he proposes for his property is reasonable in light of all the circumstances and he may properly be required to show what he intends to build, to present site, floor and exterior design plans.

27. ZONING—REASONABLENESS—REVIEW—CIRCUIT COURT—COURT
RULES—SUPERINTENDING CONTROL—ADMINISTRATIVE LAW—
MULTIPLICITY OF ACTIONS.

A person aggrieved by a determination of a legislative body on an application seeking an administrative hearing with regard to the reasonableness of a proposed use of his property under a zoning ordinance could seek review in the circuit court under a court rule providing for superintending control, absent the enactment by the Legislature of an administrative procedure act providing for review of local agency action in contested cases like now provided for action of state agencies; ordinarily a court action may be commenced only after exhaustion of the administrative remedy; a nearby property owner might seek

*superintending relief against a change granted and if the property owner also claims that the presently permitted use is unreasonable, he may, to avoid a multiplicity of actions, assert that additional ground for relief (GCR 1963, 711).*

Appeal from Court of Appeals, Division 2, Bronson, P. J., and V. J. Brennan and O'Hara, JJ., reversing and remanding Macomb, George R. Deneweth, J. Submitted June 5, 1973. (No. 10 June Term 1973, Docket No. 54,184.) Decided February 15, 1974. Rehearing denied April 16, 1974.

41 Mich App 21 reversed.

Complaint by William E. Kropf and Sanford Meyer against the City of Sterling Heights for a declaratory judgment determining defendant's zoning void, for an injunction to restrain enforcement of the zoning ordinance and require issuance of a certificate of compliance and a building permit, and for mandamus to compel defendant's agents or officials to approve plaintiffs' application to build structures and buildings consistent with multiple dwelling use. Judgment for defendant. Plaintiffs appealed to the Court of Appeals. Reversed and remanded. Defendant appeals. Reversed.

*Michael H. Feiler* and *Michael D. Schwartz,* for plaintiffs.

*O'Reilly & Cornell,* for defendant.

Amicus Curiae: Michigan Association of Municipal Attorneys (by *Jerold D. E. Lax, Joseph J. Burtell, Frank F. Gazley, Eugene Alkema, C. Edwin Carraher, Harry C. Tatigian, John J. Peters, Allan G. Hertler, W. Vincent Nash, Sigmund A. Beras, Stanley E. Burke,* and *Gene Schnelz).*

T. M. KAVANAGH, C. J. Defendant-appellant city appeals by leave granted by this Court from a decision of the Court of Appeals reversing the trial court's finding that defendant city's ordinance is constitutional.

Plaintiff builder-developers are the owners of a ten-acre parcel of land situated within Sterling Heights, Macomb County, Michigan. The parcel is irregularly shaped and surrounded by low marsh lands on the western side. The southern portion of the parcel lies within a flood plain and is traversed by a gas main. On the eastern side of the parcel, there is a large vacant area being used as a garage or depot for the Sterling Heights Department of Public Works. Trucks and other equipment are stored and garaged on the adjacent area by the Department of Public Works.

Bordering on the south side is a large area used as a junk yard partially filled with trash and various species of vermin. Farther to the southeast, Sterling Heights operates a sewage treatment plant. To the north of the property is Clinton River Road and at the northern end of the property between it and the city property are five residential lots. The land across Clinton River Road is used for single-family residences and the property in question is zoned for single-family use.

Plaintiffs filed a petition with the local zoning board seeking to have the property rezoned from single family zoning to permit multiple dwellings to be constructed on the site. Failing in this endeavor, the plaintiffs then brought suit in the circuit court seeking to have the ordinance in question[1] declared unconstitutional as applied to their property. They asserted that said ordinance was unreasonable, unconstitutional, and confisca-

_____
[1] Ordinance 100, as amended, Ordinance 131.

tory as it applied to their property. They asserted
that their parcel could not be developed as single-
family residential due to its peculiar topography,
irregular shape, proximity to noxious and deleteri-
ous uses on nearby properties, and by virtue of the
swamps and various easements traversing the sub-
ject parcel

After hearing testimony of many experts for
both sides, the circuit judge made, among others,
the following findings of fact:

"1. That the Plaintiffs purchased the property in 1968
on land contract with full knowledge of its irregular
shape, the swampy and low areas located thereon, the
extension of the Department's D.P.W. Yard and Sewage
Treatment Plant in close proximity thereto and the
area used as a 'dump' lying southerly thereof.

"2. That the Plaintiffs made no effort to check out the
suitability or feasibility of the use of the property for
residential lots prior to their purchase thereof and that
they have made no effort whatsoever to utilize the
property for residential purposes since its purchase. The
Court further finds as a matter of fact that at the time
of the purchase the plaintiffs were familiar with the
zoning then on the property (the same as it is now) and
with the master plan with the City of Sterling Heights.

* * *

"4. That the property, if used for single family resi-
dential purposes, may be developed into between 19 and
22 building lots depending on whether or not the 10,000
square foot requirement is enacted by the city or
whether the city is willing to allow the area to be
developed into lots of 7200 square feet. Further, that
even if the 10,000 foot requirement is enacted upon by
the Defendant, the property may still be economically
used for residential purposes.

* * *

"7. That the Sewage Treatment Plant is a temporary
problem and thus presents no permanent detriment to
the use of this property for residential purposes, it
being undisputed that present plans call for its being

phased out by July, 1971, and therefore, it is indisputable that by the time this property could be used for building purposes (after the installation of all required improvements) the sewage plant will no longer be there.

\* \* \*

"13. That the master plan of the City of Sterling Heights does have a reasonable relationship to the health, safety and welfare and morals of the City's citizens, it having been duly adopted after the necessary planning and consultation, not only with experts in the field, but also with the people of the city at the required public hearings.

"14. That it is beyond argument that to permit multiple zoning all along Clinton River Road would require a change in the master thoroughfare plan, it being beyond argument that the greater the density, the more traffic in an area and that the greater density created by numerous multiple developments would be beyond the capacity of a street with an 86 foot right of way.

"15. That the subject property can be developed for single family residential purposes and that it will be salable when used for such purposes.

"16. That the property would be salable at a higher price if used for multiples again is beyond argument. The Court further finds as a matter of fact that this same argument may be used with regard to almost every piece of property located in any area of Macomb County experiencing the same kind of growth as the City of Sterling Heights, and is therefore not of sufficient weight in this case to invalidate the Defendant's Zoning Ordinance.

"17. The Court was not impressed by the Plaintiffs' witnesses and would call attention to the fact that their testimony was either based upon a lack of foundation facts (in the case of Mr. D'Loski no knowledge of purchase prices or availability of utilities or cost of installation or improvements and in the case of Mr. Lehner, complete lack of knowledge of the cost of the raw land, or was elicited from witnesses who were obviously somewhat prejudiced (in the case of Mr. Karam, being the owner of adjacent lots which he

testified he was seeking to also have re-zoned from the single family residence classification)."

In accord with these factual findings, the court then ruled as follows:

"Applying these facts to the legal principles hereinbefore set forth, it becomes readily apparent that the *Plaintiffs have failed to sustain the burden which they must carry* in order to establish their cause of action. The Court does, therefore, find that it cannot on the basis of these proofs, be said that the Defendant's Zoning Ordinance is unreasonable, arbitrary or capricious as applied to the property in question. It therefore follows that their Bill of Complaint should be dismissed, with prejudice." (Emphasis added.)

On appeal, the Court of Appeals, 41 Mich App 21; 199 NW2d 567, Judge V. J. BRENNAN dissenting, in overruling the lower court entertained two issues:

1. That the trial court allowed a municipality to justify its zoning based upon future, as opposed to present, conditions, and

2. That the trial court was unduly swayed by the fact that plaintiffs knew of the zoning restrictions at the time they purchased the property.

In a well written opinion, Judge BRONSON correctly decided the first issue it entertained, stating:

"Defendant asserts that these nearby inconsistent uses are only temporary, that the sewage plant will be closed on completion of a new sanitary sewer system and that the City of Sterling Heights is in the process of seeking an alternate site for its department of public works garage. From these contentions we believe the crucial issue in this case is pointedly raised: whether a city may restrict the use of property based upon circumstances which it believes will occur in the future but have not yet occurred at the time of trial of the ordinance.

"The rule of law governing such problems is well settled: zoning, to be valid, must be reasonable, and its reasonableness must be measured by present conditions. The rule was expressly stated in *Gust v Township of Canton,* 342 Mich 436, 442 [70 NW2d 772] (1955):

" 'The test of validity is not whether the prohibition may at some time in the future bear a real and substantial relationship to the public health, safety, morals or general welfare, but whether it does so now.'

"This rule has been likewise stated in *Comer v Dearborn,* 342 Mich 471 [70 NW2d 813] (1955); *West Bloomfield Twp v Chapman,* 351 Mich 606 [88 NW2d 377] (1958); *Roll v City of Troy,* 370 Mich 94 [120 NW2d 804] (1963); and *Biske v City of Troy,* 381 Mich 611 [166 NW2d 453] (1969). In *Biske v City of Troy, supra,* the defendant municipality argued that its restrictive ordinance should be measured in light of the development expected to occur in the future rather than by existing circumstances by which the ordinance failed to demonstrate any relationship to public health, safety, welfare or morals. The Court, in setting forth the present conditions rule, stated:

" 'Meanwhile the hapless property owner waits, pays taxes and hopes that either the anticipated development will come shortly or that the zoning authority will release to some extent its griphold of his property right.' 381 Mich 617.

"While the rule is clear we cannot believe that this Court is required to close its eyes to developments or improvements within the municipality which are imminent or a factual certainty. The measure of such consideration must be the certainty or speculative nature of the 'future conditions' which the municipality asserts will render its ordinance reasonable and proper. Furthermore, we must be sensitive to the harm which might befall the community in the future if the use proposed by the property owner is permitted because circumstances do not yet justify the prohibition."

However, the Court then went on to state:

"This Court recently made it clear that where multi-

ples are involved, the *municipality has the burden of
proving the validity of ordinances* which seek to exclude
them. *Simmons v Royal Oak,* 38 Mich App 496 [196
NW2d 811] (1972). The fact that the zoning for this
property was adopted as part of a valid master plan is
not enough to sustain that burden. While a master plan
is evidence of reasonableness, it by itself is not conclu-
sive. While we do not impose the burden on defendant
retroactively, the record in this case makes it clear that
the property in question cannot be developed in strict
accord with the master plan.

"We cannot perceive that any harm will come to the
community by allowing plaintiffs' proposed multiple
residential development." (Emphasis added.)

The Court of Appeals then correctly stated that
one who purchases with knowledge of zoning re-
strictions may nonetheless be heard to challenge
the restrictions' constitutionality. An otherwise
unconstitutional ordinance, we agree, does not lose
this character and immunize itself from attack
simply by the transfer of property from one owner
to another.

Four questions are raised on appeal. (1) Does the
zoning ordinance as it applies to plaintiffs' prop-
erty bear a present relationship to the public
health, safety, morals and general welfare? (2) We
condense the remaining three questions into one.
Does the defendant municipality bear the burden
of proving the validity of an ordinance which
excludes multiple dwellings from a zoning use
district and did the Court of Appeals commit error
in enjoining defendant-appellant from interfering
with a proposed multiple-family development?

We review *de novo* the record on appeal. *Biske v
City of Troy,* 381 Mich 611; 166 NW2d 453 (1969).
Plaintiffs attack the ordinance in question by
claiming it violates one or more of their constitu-
tional rights and thus is unconstitutional as ap-

plied to their property. They request the following relief:

"C. That Defendant be required to issue a certificate of compliance with zoning and a building permit to Plaintiffs for the purpose of constructing multiple dwelling residence on the within described Plaintiff's property.

"D. That after the Court has declared Plaintiffs' rights as herein prayed for and upon proper compliance with Defendant's promulgated procedures, should the Defendant, its officers, agents, employees, Boards or Commissions refuse to approve any plans submitted by Plaintiffs or anyone claiming by, through or under Plaintiffs for buildings and structures consistent with multiple dwelling use, then it is prayed that those agents or officials of Defendant who are charged with the duty, be mandated to approve Plaintiffs' application to build structures and buildings consistent with multiple dwelling use."

The Court of Appeals ruled that, in light of the fact that multiple dwellings were a "favored use" the burden of proof rested on the city to prove that such exclusion was not arbitrary, capricious, or unreasonable. As this holding may be determinative of the case, we now address ourselves to this rule espoused by the Court of Appeals.

This concept of a "favored or preferred use" and the attendant shifting of the burden of proof when such use is present in a case, finds its origins in *Bristow v City of Woodhaven,* 35 Mich App 205; 192 NW2d 322 (1971) and is applied to multiple dwellings in *Simmons v Royal Oak,* 38 Mich App 496; 196 NW2d 811 (1972).

The rationale for such a concept is found in *Bristow, supra,* 210–211:

"We look again to the language of *Brae Burn Inc. v. City of Bloomfield Hills* (1957), 350 Mich 425, 432 [86

NW2d 166], where Justice Smith, writing for the majority, stated that normally a zoning ordinance:

" 'comes to us clothed with every presumption of validity, *Hammond v B. H. Building Inspector* [1951], 331 Mich 551 [50 NW2d 155], and it is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property. *Janesick v City of Detroit* [1953], 337 Mich 549 [60 NW2d 452]. *This is not to say, of course, that a local body may with impunity abrogate constitutional restraints.'* (Emphasis supplied.)"

Continuing, the Court of Appeals said:

"A review of existing precedents should serve as a guide to the trial courts of our state that, where it is shown that local zoning exists at odds with the general public welfare rather than in furtherance of it, there can be no presumed validity attaching to that portion of an ordinance which conflicts with public interest. Certain uses of land have come to be recognized as bearing a real, substantial, and beneficial relationship to the public health, safety, and welfare so as to be afforded a preferred or favored status. To restrict such uses appears to conflict with the concept of presumed validity of an ordinance prohibiting such an otherwise legitimate use. * * *

"Therefore, in such limited situations, the proponent of a preferred or protected but prohibited use may establish a *prima facie* case thereby casting upon the municipality the burden of going forward to justify its prohibition of a use heretofore recognized as beneficial to the public welfare."

A review of the authorities cited in support of the aforesaid proposition reveals that this "favored use" concept and the attendant shifting of the burden of proof as to the constitutionality of an ordinance upon the municipality, rests upon no statutory or case law foundation in this state. *Bristow* reaches the conclusion it does by relying

strongly upon the language of *Roman Catholic Archbishop of Detroit v Village of Orchard Lake,* 333 Mich 389; 53 NW2d 308 (1952). In *Archbishop, supra,* a local ordinance operated to exclude from a community *all churches and schools* in complete contradiction to the Michigan Constitution's favoring and encouraging "religion, morality and knowledge".[2] We stated, p 394:

"Hardly compatible is this with a presumption that exclusion of school and church from an entire municipality is conducive to public health, safety, morals or the general welfare, a presumption which we decline to indulge. A thesis so inconsistent with the spirit and genius of our free institutions and system of government and the traditions of the American people will not be accepted by way of presumption, nor at all in the absence of competent evidence establishing a real and substantial relationship between the attempted exclusion and public health, safety, morals or the general welfare and, hence, the reasonableness and validity of the restriction upon use of private property as a legitimate exercise of the State's police powers."

From this statement the lower Court drew the following rule, which it extended to that aforementioned:

"Thus, *total* prohibition by a local zoning ordinance of a 'constitutionally'-recognized use will amount to establishment of a *prima facie* case placing a heavy burden on the municipality to justify the local legislation." (Emphasis added.)

Such rule as stated is not incorrect. But only a limited comparison between this statement and that quoted above reveals that in the final holding of *Bristow, supra,* the Court of Appeals left out one very important word, "total". On its face, an ordi-

---

[2] Const 1908, art 11, § 1.

nance which *totally* excludes from a municipality
a use recognized by the constitution or other laws
of this state as legitimate also carries with it a
strong taint of unlawful discrimination and a de-
nial of equal protection of the law as to the ex-
cluded use. Such a taint can hardly be presumed
to be present in cases such as that presently before
us when the general use is reasonably permitted
in the community and the only issue is whether it
was arbitrarily or capriciously denied as to this
particular parcel of land. We reaffirm our state-
ment in *Northwood Properties Co v Royal Oak
City Inspector,* 325 Mich 419, 422–423; 39 NW2d
25 (1949):

"The burden was not on the defendants to establish
the relationship, but upon the plaintiff to show the lack
of it. [Cases cited.] This burden plaintiff did not sustain.
While the ordinance must stand the test of reasonable-
ness, the presumption is in favor of its validity and
courts may not invalidate ordinances unless the consti-
tutional objections thereto are supported by competent
evidence or appear on their face. *Portage Township v
Full Salvation Union,* 318 Mich 693 [29 NW2d 297
(1947)]. Invalidity does not appear on the face of the
ordinance merely from its classification of certain prop-
erty for use for single residences only, * * * ."

Insofar as decisions of the Court of Appeals are
based solely on the concept of "favored or pre-
ferred use" and the attendant shifting of burden
of proof, they are hereby overruled. Plaintiffs must
bear the burden of proof in attacking the constitu-
tionality of the ordinance in question. It is up to
them to present sufficient proofs to the court show-
ing that the defendant city by its action violated
one of their aforesaid constitutional rights and
thus acted "unreasonably". They must show that
the city, via its ordinance denied them substantive

or procedural due process, equal protection of the laws, or deprived them of their property without just compensation. To each of these claims the court will apply their proofs presented and determine if they have met their burden in showing the ordinance in question to be "unreasonable", for, as we have said, reasonableness is the test of its validity.

Plaintiffs do not allege, nor do their proofs show, that they were denied procedural due process by the manner in which the ordinance was enacted. Nor do they allege, nor the proofs show, that the city has a policy of discriminating against multiple residences and thus raise an equal protection problem in this case. Their proofs do go to a substantive due process and a Fifth Amendment argument and these we will now handle.

A plaintiff-citizen may be denied substantive due process by the city or municipality by the enactment of legislation, in this case a zoning ordinance, which has, in the final analysis, no reasonable basis for its very existence. The power of the city to enact ordinances is not absolute. It has been given power by the State of Michigan to zone and regulate land use within its boundaries so that the inherent police powers of the state may be more effectively implemented on the local level. But the state cannot confer upon the local unit of government that which it does not have. For the state itself to legislate in a manner that affects the individual right of its citizens, the state must show that it has a sufficient interest in protecting or implementing the common good, via its police powers, that such private interests must give way to this higher interest. Different degrees of state interest are required by the courts, depending upon the type of private interest which is being

curtailed. When First Amendment rights are being restricted we require the state to justify its legislation by a "compelling" state interest. With regard to zoning ordinances, we only ask that they be "reasonable". And, as we have stated, they are presumed to be so until the plaintiff shows differently.

In looking at this "reasonableness" requirement for a zoning ordinance, this Court will bear in mind that a challenge on due process grounds contains a two-fold argument; first, that there is no reasonable governmental interest being advanced by the present zoning classification itself, here a single family residential classification, or secondly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question. Though each of those arguments are founded upon due process, in reality they are distinct arguments, each requiring different proofs.

Applying the instant proofs to the first issue, the reasonableness of the single family residential classification itself, we find that plaintiffs present little proof directly relating to this issue. While they do point out the adverse influences of the aforesaid sewage treatment plant and the peculiar characteristics of the property itself, they make no argument that the land is improperly reserved for human habitation, as opposed to being zoned for a commercial or industrial use. They acknowledge that the peculiar characteristics of the property, to wit, the low swampy areas, are unsuitable for any use regardless of what the zoning is. In fact, the total proofs they present put forward the proposition that a greater number of people should reside on this land and make it their home rather than

just a few. Such being the proofs, the Court cannot find that the city was unreasonable in zoning this land for single-family residences.

Plaintiffs' proofs are more directly related to the second aspect of due process, attempting to show that the city acted arbitrarily and capriciously in restricting the land use to single family residence and thereby excluding other uses, including multiple dwellings. We now turn to this issue.

The United States Supreme Court, *Euclid Village v Ambler Realty Co,* 272 US 365; 47 S Ct 114; 71 L Ed 303; 54 ALR 1016 (1926), adopted by this Court in *Austin v Older,* 283 Mich 667; 278 NW 727 (1938), set forth several reasons why the local zoning board could reasonably restrict multiple dwellings in a residential area (pp 394–395):

"With particular reference to apartment houses, it is pointed out that the development of detached house sections is greatly retarded by the coming of apartment houses, which has sometimes resulted in destroying the entire section for private house purposes; that in such sections very often the apartment house is a mere parasite, constructed in order to take advantage of the open spaces and attractive surroundings created by the residential character of the district. Moreover, the coming of one apartment house is followed by others, interfering by their height and bulk with the free circulation of air and monopolizing the rays of the sun which otherwise would fall upon the smaller homes, and bringing, as their necessary accompaniments, the disturbing noises incident to increased traffic and business, and the occupation, by means of moving and parked automobiles, of larger portions of the streets, thus detracting from their safety and depriving children of the privilege of quiet and open spaces for play, enjoyed by those in more favored localities,—until, finally, the residential character of the neighborhood and its desirability as a place of detached residences are utterly destroyed. Under these circumstances, apartment houses, which in a different environment would

be not only entirely unobjectionable but highly desirable, come very near to being nuisances.

"If these reasons, thus summarized, do not demonstrate the wisdom or sound policy in all respects of those restrictions which we have indicated as pertinent to the inquiry, at least, the reasons are sufficiently cogent to preclude us from saying, as it must be said before the ordinance can be declared unconstitutional, that such provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare."

Proofs were presented showing that the city had considered the possibility of allowing multiple dwellings to be erected on plaintiffs' property and had rejected same for, among others, the following reasons: That Clinton River Road was an inadequate thoroughfare to handle the increased traffic; that multiple dwellings were inconsistent with the proposed developmental plans for the general area and since plaintiffs' land was not unique for the area, rezoning of plaintiffs' property would probably necessitate similar action on the other properties and the end result would be intolerable.

To these proofs plaintiffs' main, if not sole response, was that the instant land was more valuable when used for multiple residences and that this would constitute the "highest use" of said property. While such arguments may be relevant in a Fifth Amendment attack on the ordinance, they do not rebut the showing of reasonableness on the part of the city, nor do they meet the burden plaintiffs have in showing that exclusion of other uses from this property was arbitrary and capricious. This Court and the Supreme Court in *Euclid, supra,* has set forth several rational reasons a city may have in excluding other uses from a particular piece of property. It is presumed that the city acted for such reasons, or for any other

valid reasons, in enacting a particular ordinance. To show arbitrariness and capriciousness on the part of the city, plaintiffs must show that it did not so act, or that no such grounds reasonably exist with respect to the instant parcel. In this case plaintiffs have not so shown.

It is not for this Court to second guess the local governing bodies in the absence of a showing that that body was arbitrary or capricious in its exclusion of other uses from a single-family residential district. Justice SMITH aptly pointed this out in *Brae Burn, Inc, v Bloomfield Hills, supra,* pp 430–432.

"[T]his Court does not sit as a superzoning commission. Our laws have wisely committed to the people of a community themselves the determination of their municipal destiny, the degree to which the industrial may have precedence over the residential, and the areas carved out of each to be devoted to commercial pursuits. With the wisdom or lack of wisdom of the determination we are not concerned. The people of the community, through their appropriate legislative body, and not the courts, govern its growth and its life. Let us state the proposition as clearly as may be: It is not our function to approve the ordinance before us as to wisdom or desirability. For alleged abuses involving such factors the remedy is the ballot box, not the courts. We do not substitute our judgment for that of the legislative body charged with the duty and responsibility in the premises. As Willoughby phrased it in his treatise, Constitution of the United States (2d ed, 1929), vol 1, § 21, p 32: 'The constitutional power of a law-making body to legislate in the premises being granted, the wisdom or expediency of the manner in which that power is exercised is not properly subject to judicial criticism or control.' We held similarly in *Tel-Craft Civic Association v City of Detroit,* 337 Mich 326, 331 [60 NW2d 294 (1953)]:

" 'Unless it can be shown that the council acted arbitrarily or unreasonably, their determination is final

and conclusive and no court may alter or modify the ordinance as adopted.

" ' "While it is within the province of the courts to pass upon the validity of statutes and ordinances, *courts may not legislate nor undertake to compel legislative bodies to do so one way or another.* (Citing cases.) The court erred in seeking to compel the defendant mayor and city commission members to amend the ordinance." ' *Northwood Properties Co. v Royal Oak City Inspector,* 325 Mich 419, 423. [Emphasis added.]

" ' "The ultimate power is vested in the council, and its good faith in acting for the public welfare cannot be questioned by the judicial branch of government." *Gratton v Conte,* 364 Pa 578, 583 (73 A2d 381, 384) [1950]'.

"It is a necessary corollary of the above that the ordinance comes to us clothed with every presumption of validity, *Hammond v B. H. Building Inspector,* 331 Mich 551 [50 NW2d 155 (1951)], and it is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property. *Janesick v City of Detroit,* 337 Mich 549 [60 NW2d 452 (1953)]. This is not to say, of course, that a local body may with impunity abrogate constitutional restraints. The point is that we require more than a debatable question. We require more than a fair difference of opinion. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness."

With the statements of Justice SMITH, we heartily concur. Plaintiffs in this case did not meet the burden of proof thrust upon them and the trial court properly so held.

Turning now to the issue upon which plaintiffs presented almost the totality of their proofs, we consider whether, in this situation, plaintiffs' property has been so restricted as to amount to a confiscation of their property. Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner

must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted. *Brae Burn, Inc, v Bloomfield Hills, supra; Smith v Wood Creek Farms,* 371 Mich 127; 123 NW2d 210 (1963).

Plaintiffs present many proofs on this issue, however, the city has presented equally forceful evidence rebutting same. Expert witnesses for both sides testified in an attempt to aid the court in reaching a correct conclusion. It is true that we hear these cases *de novo.* But in cases such as we have before us, where the evidence presented on the record could reasonably support either party, this Court feels that this writer's words in *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962) are most appropriate and should serve as a guideline for this Court and the lower courts reviewing similar cases *de novo:*

"This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case, unless, after an examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge."

In the instant case the circuit judge has assisted this Court in reaching a proper conclusion by including, in his findings of fact, his impression as to the credibility of plaintiffs' witnesses. He felt their testimony should not be afforded as much weight as that introduced on behalf of the city. Accordingly, he specifically found that the instant

property was suitable for, could be developed for, and was salable when used for single family residential purposes. A review of the record *in toto* reveals that the circuit judge, acting as a trier of fact, could reasonably have reached these conclusions. We conclude they are supported by the record. We further conclude from the record that were we the trial court we would not have reached a different conclusion.

Accordingly, we hereby affirm the decision of the trial court. The judgment of the Court of Appeals is reversed and the judgment of the circuit court is reinstated. A public question being involved, no costs shall be taxed.

SWAINSON, WILLIAMS, and M. S. COLEMAN, JJ., concurred with T. M. KAVANAGH, C. J.

LEVIN, J. *(concurring in reversal)*. Much of the law of zoning is premised on the assumption that zoning decisions of a local legislative body necessarily represent legislative action.

On that premise, the courts require a property owner dissatisfied with a zoning use restriction to prove that the "legislation" is irrational—the burden generally imposed when an act of the Legislature is attacked as unconstitutional. That approach is sound if maintenance of a use restriction truly reflects legislative action; the courts may then properly require a person attacking the restriction to prove that *no use permitted is reasonable*. Where, however, maintenance of a use restriction reflects administrative, not legislative, action, the guideline ought to be that generally followed by zoning authorities in granting or denying applications for a change in a use restriction as it affects particular property—*the reasonableness of the proposed use.*

For most properties, there is a wide spectrum of potential reasonable uses; the choices many and varied. It is, therefore, of critical importance whether the correct inquiry on judicial review is the reasonableness of the use permitted under present zoning or the reasonableness of the proposed use.

I

The doctrine of separation of powers, a restriction on the exercise by one of the three major branches of state government of powers belonging to another,[1] does not bar the exercise of administrative power by a *local* legislative body.[2]

---

[1] The Constitution provides for three separate branches of government, but in providing that "[n]o person exercising powers of one branch shall exercise powers properly belonging to another branch except as expressly provided in this constitution" (Const 1963, art 3, § 2), the framers indicated that persons exercising the powers of one branch may, to the extent provided, exercise the powers of another branch.

[2] The Constitution provides (art 7, § 8) that "[b]oards of supervisors [of counties] shall have legislative, administrative and such other powers and duties as provided by law"; and similarly, that the trustees of a township have "legislative and administrative powers and duties" as shall be provided by law. Art 7, § 18. While the Constitution does not expressly provide that the Legislature may confer administrative powers and duties or, indeed, legislative powers on the legislative body of a city or village, there being no constitutional prohibition against conferring such power and a state constitution being essentially a restriction on the power of the Legislature, the Legislature is free to confer administrative powers and duties on the legislative body of a city or village as well as upon the legislative body of a county or township.

"Certain agencies, officers, or bodies come within the term 'administrative agencies' to some extent in regard to particular functions or for particular purposes although for most purposes they are not administrative agencies but are legislative, executive, or judicial officers or bodies. When such bodies or officers act in an administrative capacity they suffer the limitations of administrative agencies. This is true in regard to particular powers exercised by local governing bodies, such as boards of supervisors or county commissioners, city councils, and village commissioners; powers delegated by Congress to the President or a member of his cabinet, or by state legislatures to the governor of the state; and, where the law permits

Whether official action is legislative or administrative depends on the nature of the decision and the process by which it is reached as well as the governmental authority that makes the decision.

When action is based on general grounds, the decision is ordinarily legislative. When it is based on individual grounds, it is ordinarily administrative.[3]

---

this, to certain duties or powers reposed by the legislature in courts or judges." 1 Am Jur 2d, Administrative Law, § 58, pp 856–857.

*Cf. Avery v Midland County,* 390 US 474, 482; 88 S Ct 1114; 20 L Ed 2d 45 (1968); *State, ex rel Klostermeyer v City of Charleston,* 130 W Va 490; 45 SE2d 7, 10; 175 ALR 637 (1947); *Milwaukie Co of Jehovah's Witnesses v Mullen,* 214 Or 281; 330 P2d 5; 74 ALR2d 347 (1958).

[3] The principle which should govern the disposition of this and most zoning cases was adverted to by Mr. Justice Holmes in a tax assessment case where he distinguished an earlier decision of the United States Supreme Court *(Londoner v Denver,* 210 US 373; 28 S Ct 708; 52 L Ed 1103 [1908]) saying that in the earlier case a relatively small number of persons "were exceptionally affected, in each case upon individual grounds." *Bi-Metallic Investment Co v State Board of Equalization of Colorado,* 239 US 441, 446; 36 S Ct 141; 60 L Ed 372 (1915):

"Where a rule of conduct applies to more than a few people, it is impracticable that everyone should have a direct voice in its adoption. The Constitution does not require all public acts to be done in town meeting or an assembly of the whole. General statutes within the state power are passed that affect the person or property of individuals, sometimes to the point of ruin, without giving them a chance to be heard. Their rights are protected in the only way they can be in a complex society, by their power, immediate or remote, over those who make the rule. * * * In *Londoner v Denver,* 210 US 373, 385 [28 S Ct 708; 52 L Ed 1103 (1908)], a local board had to determine 'whether, in what amount and upon whom' a tax for paving a street should be levied for special benefits. A relatively small number of persons was concerned, who were exceptionally affected, in each case upon individual grounds, and it was held that they had a right to a hearing. But that decision is far from reaching a general determination dealing only with the principle upon which all the assessments in a county had been laid." *Bi-Mettalic Investment Co v State Board of Equalization of Colorado, supra,* pp 445–446.

In *Bi-Metallic* the United States Supreme Court affirmed a decision requiring the local taxing officer to make a 40% increase in the assessed valuation of all taxable property in the city and county of Denver.

Professor Kenneth Culp Davis states that the principle elucidated by Justice Holmes is that a party "has a right to be heard when

When legislative, the governmental authority can act without a hearing and judicial review is limited to an inquiry whether the action is irrational (and thus a denial of substantive due process) or violates some other constitutional limitation.

When based on individual grounds—when administrative—there must be a hearing and the inquiry on review, under the Michigan Constitution, is whether the decision is "supported by competent, material and substantial evidence on the whole record."[4]

## II

Nothing is more specific, less general, than the zoning ordinance of most developed communities. While passed in the form of a law, the typical zoning ordinance represents particularized applications of administrative power, reflecting choices made over an extended period of time between particular properties and proposed developments ad hoc, *ad hominen.*

We intend no criticism; we impugn no motives. The purposes and motives of the persons and authorities wielding zoning power are as public

official action is based upon 'individual grounds' but not necessarily when official action is based upon general grounds, that is, when the facts are adjudicative but not when they are legislative." Professor Davis writes that this principle applies generally, not just in tax cases. 1 Davis, Administrative Law Treatise, § 7.04, p 421.

[4] "All final decisions, findings, rulings and orders of any administrative officer or agency existing under the constitution or by law, which are judicial or quasi-judicial and affect private rights or licenses, shall be subject to direct review by the courts as provided by law. This review shall include, as a minimum, the determination whether such final decisions, findings, rulings and orders are authorized by law; and, in cases in which a hearing is required, whether the same are supported by competent, material and substantial evidence on the whole record." Const 1963, art 6, § 28.

spirited as those of the persons and authorities which exercise judicial power.

The time has come, however, to cast aside old slogans and catchwords. For most communities, zoning as long range planning based on generalized legislative facts without regard to the individual facts has proved to be a theoretician's dream, soon dissolved in a series of zoning map amendments, exceptions and variances—reflecting, generally, decisions made on individual grounds—brought about by unanticipated and often unforeseeable events: social and political changes, ecological necessity, location and availability of roads and utilities, economic facts (especially costs of construction and financing), governmental needs, and, as important as any, market and consumer choice.

Realty is not what a master plan shows but how it is implemented. There may be a few communities that have adopted a plan and steadfastly enforced the original zoning restrictions without significant change. They are most likely small bedroom communities walling themselves off from the rest of the metropolitan area—which provides employment, goods and services—or rural communities not yet subjected to the forces and demands which have required modification of most plans. In most communities, however, especially the larger ones, there have been dozens, hundreds and, in some cases, thousands of zoning map changes, exceptions and variances granted.

In deciding whether to grant a change of zoning, a local legislative body inevitably looks beyond the question whether the use presently permitted is reasonable to the merits, the individual grounds, of the applicant's claim that the use he proposes is a better, more reasonable use.

When a local legislative body decides to grant a change in zoning, it has in fact determined the merits of the individual grounds. So, too, unless the local body in fact rejects all applications for a change in zoning without reaching the merits, when it denies an application after entertaining the merits, it also in fact decides the merits of the individual grounds advanced.

Such a determination on individual grounds is administrative, not legislative.[5] It is "quasi-judicial

---

[5] "Zoning decisions may be either administrative or legislative depending upon the nature of the act. *See Durocher v King County,* 80 Wash 2d 139; 492 P2d 547 (1972). But, whatever their nature or the importance of their categorization for other purposes, zoning decisions which deal with an amendment of the code or reclassification of land thereunder must be arrived at fairly. The process by which they are made, subsequent to the adoption of a comprehensive plan and a zoning code, is basically adjudicatory.

"Generally, when a municipal legislative body enacts a comprehensive plan and zoning code it acts in a policy making capacity. But in amending a zoning code, or reclassifying land thereunder, the same body, in effect, makes an adjudication between the rights sought by the proponents and those claimed by the opponents of the zoning change. The parties whose interests are affected are readily identifiable. Although important questions of public policy may permeate a zoning amendment, the decision has a far greater impact on one group of citizens than on the public generally." *Fleming v Tacoma,* 81 Wash 2d 292, 298–299; 502 P2d 327, 331 (1972).

"At this juncture we feel we would be ignoring reality to rigidly view all zoning decisions by local governing bodies as legislative acts to be accorded a full presumption of validity and shielded from less than constitutional scrutiny by the theory of separation of powers. Local and small decision groups are simply not the equivalent in all respects of state and national legislatures. * * *

"Ordinances laying down general policies without regard to a specific piece of property are usually an exercise of legislative authority, are subject to limited review, and may only be attacked upon constitutional grounds for an arbitrary abuse of authority. On the other hand, a determination whether the permissible use of a specific piece of property should be changed is usually an exercise of judicial authority and its propriety is subject to an altogether different test. * * *

"With future cases in mind, it is appropriate to add some brief remarks on questions of procedure. Parties at the hearing before the county governing body are entitled to an opportunity to be heard, to an opportunity to present and rebut evidence, to a tribunal which is impartial in the matter—i.e., having had no pre-hearing or ex parte

and affect[s] private rights". Const 1963, art 6, § 28 (see fn 4). It is not surrounded by the aura of an act of the Legislature. It is subject to direct review by the courts. The merits, the reasonableness of the proposed use—the standard in fact generally followed by a local legislative body when granting or refusing a change—is, under our constitution, subject to judicial review. The question on review is whether the grant or denial is "supported by competent, material and substantial evidence on the whole record."

We do not question the power of the Legislature to legislate regarding land use, or that land use *legislation* is clothed with a presumption of constitutionality, subject to challenge only if irrational—individual property owners being *entitled* to variances only if they can show an unconstitutional appropriation of their property. Nor do we question the power of the Legislature to delegate to other public officials, *e.g.,* local legislative bodies, the authority to make such legislative determinations. Their determinations, ordinances and plans are likewise clothed with a presumption of constitutionality; the scope of judicial review is limited and there should be relatively few judicial decisions finding zoning unconstitutional.

When in fact, as well as theory, zoning is legislative, the legislative body adopts on general, not individualized, grounds a plan of general application to all the land in the community and stops there—with variances granted only when constitutional *necessity* requires it—there are no determinations on individual grounds subject to art 6, § 28 judicial review and the zoning choices of the legis-

contacts concerning the question at issue—and to a record made and adequate findings executed. Comment, *Zoning Amendments—The Product of Judicial or Quasi-Judicial Action,* 33 Ohio St L J 130–143 (1972)." *Fasano v Board of County Commissioners of Washington County,* 264 Or 574, 580–581, 588; 507 P2d 23, 26, 30 (1973).

lative body are clothed with a presumption of constitutionality.

However, local zoning authorities that in fact act on individual not on general grounds, that entertain applications for and grant changes in their zoning ordinances and maps, spot zone, approve and refuse planned unit developments, make exceptions and allow variances effecting a change in zoning without a showing of constitutional necessity, are exercising administrative, not legislative, power and cannot claim for such determinations the presumption which shields legislative action.

Proceedings based on individual grounds are quasi-judicial. The local authority must grant a hearing. The determination of the local authority must be based on evidence. The determination, granting or denying alike, is subject to judicial review on the record made at the hearing in accordance with the standard prescribed in the constitution. This issue on review is not whether "legislation" is constitutional; no constitutional question is presented. By the manner in which they have exercised (frequently unavoidably) the power delegated to them under the zoning enabling acts, the zoning authorities have changed the question from whether the use permitted by present zoning is reasonable to whether the proposed use is reasonable.[6]

---

[6] Under existing precedent the question on judicial review varies depending on whether a change in zoning has been granted or denied: When a change is granted and an adjoining property owner (or the owner of the affected property) challenges the change, the question on review is whether the *newly permitted use,* the proposed use, is reasonable; when a change is denied and the owner of the property affected challenges the denial, the question on review is whether the *present use* is reasonable. Since the question on judicial review is in every case whether a proposed use should be *permitted,* it is anomalous for the scales to be weighted depending on who won or lost below.

## III

There is no need to overrule *Brae Burn.* [7] *Brae
Burn* assumes that the action of a legislative body
is necessarily legislative. The reality of modern
zoning is that most zoning decisions are adminis-
trative. However, for a community which adopted
a zoning ordinance on general grounds and which
does not have a history of granting, without regard
to constitutional necessity, changes on individual
grounds, the question on review may remain, as
set forth in *Brae Burn,* whether the present use,
the use permitted by the ordinance, is reasonable.

A property owner seeking a change would, in all
events, continue to have the burden of establishing
that the use he proposes for his property is reason-
able in light of all the circumstances. He may
properly be required to show what he intends to
build, to present site, floor and exterior design

As in our view a grant or denial both generally represent administra-
tive, not legislative, action, we are of the opinion that the question
on review should in every case be the same—whether the proposed
use is reasonable.

(Of course, when a change in zoning is granted the newly permitted
[proposed] use becomes, in a sense, the "present use". Characteriza-
tion should not, however, obscure correct analysis. The adoption of a
change in zoning does not in fact change the use of the property; until
judicial challenges are concluded—indeed, until the property is put to
the newly permitted use—it is merely a proposed use.)

[7] *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425, 430–432; 86
NW2d 166 (1957). In that case this Court stated that it "does not sit
as a superzoning commission"; courts do not pass upon the "wisdom
or desirability" of a zoning ordinance; "the remedy is the ballot box,
not the courts"; "[w]e do not substitute our judgment for that of the
legislative body charged with the duty and responsibility in the
premises"; " 'the constitutional power of a law-making body to legis-
late in the premises being granted, the wisdom or expediency of the
manner in which that power is exercised is not properly subject to
judicial criticism or control' "; " 'unless it can be shown that the
council acted arbitrarily or unreasonably, their determination is final
and conclusive' "; " 'courts may not legislate or undertake to compel
legislative bodies to do so one way or another' "; "we require more
than a debatable question. We require more than a fair difference of
opinion. It must appear that the clause attacked is an arbitrary fiat, a
whimsical *ipse dixit,* and that there is no room for a legitimate
difference of opinion concerning its reasonableness."

plans. Among the factors to be considered are the availability of utilities and roads, and the present and impending uses of nearby properties. Aesthetics may be relevant. Is the proposed use harmonious, compatible, appropriate, or would it impinge unreasonably on the value or use of nearby properties or impair sound communal development.

This case was tried on the assumption, based on existing precedent, that the question on review is whether the use of plaintiffs' property permitted by the present zoning is reasonable. It is not possible, on the record before us, to determine whether the proposed use of this approximately ten-acre parcel for multiple dwellings is reasonable in light of the nearby single-family residences located across Clinton River Drive and other pertinent factors.

We would reverse without prejudice to an application to the legislative body of the City of Sterling Heights seeking an administrative hearing with regard to the reasonableness of the proposed use. A person aggrieved by such a determination could seek review in the circuit court under GCR 1963, 711[8] absent the enactment by the Legislature of an administrative procedure act providing for review of local agency action in contested cases like now provided for action of state agencies.[9]

---

[8] Rule 711 provides that an order of superintending control may be used in any fashion necessary to implement the superintending or supervisory control power of the Court over inferior tribunals where another plain, speedy, and adequate remedy is not available to the party seeking the order.

Ordinarily a court action may be commenced only after exhaustion of the administrative remedy. If the local authorities deny a change in zoning then a writ of superintending control could be sought; similarly, a nearby property owner might seek superintending relief against a change granted. If the property owner also claims that the presently permitted use is unreasonable, he may, to avoid a multiplicity of actions, assert that additional ground for relief.

[9] MCLA 24.203; MSA 3.560(103).

Postscript: If the Legislature were to provide for review of local administrative decisions by a regional or state zoning review board, then judicial review would not be available until completion of the administrative review. Regional or state administrative review would reduce the role of the courts in the zoning process and would be most welcome.

T. G. KAVANAGH, J., concurred with LEVIN, J.

J. W. FITZGERALD, J., did not sit in this case.