DELTOWNE HOUSING CORPORATION v CITY OF ESCANABA

1. Zoning—Reasonable Use—Exclusions—Arbitrariness—Capriciousness.

A court improperly refused to enjoin a city's enforcement of its zoning ordinance where plaintiffs' proposed use of their property was reasonable in light of all the circumstances, the reasons given for not granting their rezoning request were without foundation, and the exclusion of other types of legitimate land use from the area where plaintiffs' property was located was purely arbitrary, capricious, and unfounded.

2. Zoning—Restrictions—Presumptions—Courts—Overcoming Presumptions.

Courts afford property owners an opportunity to overcome the presumption that action by a municipality in restricting land use is valid, and the burden is borne by the plaintiffs who must establish through the testimony of highly competent witnesses that a municipality's denial of a rezoning request constitutes action without legitimate reason.

Appeal from Delta, Bernard H. Davidson, J. Submitted October 14, 1975, at Marquette. (Docket No. 20591.) Decided November 14, 1975. Leave to appeal applied for.

Complaint by Deltowne Housing Corporation and Delta Catholic Credit Union against the City of Escanaba to enjoin enforcement of a zoning ordinance. Judgment for defendant. Plaintiffs appeal. Reversed.

*Strom, Butch, Quinn & Rosemurgy,* for plaintiffs.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Zoning § 43.
[2] 58 Am Jur, Zoning §§ 21, 256.

*Hansley, Neiman, Peterson & Beauchamp,* for defendant.

Before: ALLEN, P. J., and DANHOF and M. F. CAVANAGH, JJ.

PER CURIAM. The instant appeal concerns the constitutionality of use restrictions placed upon plaintiffs' property within the City of Escanaba. After a close scrutinization of the record *de novo,*[1] this Court is convinced defendant acted unreasonably in rejecting plaintiffs' proposed use of their property for multiple residential dwelling construction, as a planned-unit development district.

Plaintiff, Deltowne Housing Corporation, is a nonprofit entity organized to provide citizens of the community with adequate housing via low interest mortgage monies provided through the Michigan Housing Development Authority. Deltowne's Vice President, William DeHaan, is also chairman of defendant's housing commission.[2] Delta Catholic Credit Union owns the involved property; it has granted Deltowne a valid option to purchase land.

Plaintiffs' property is bounded on the north by a Class F—light manufacturing district. Existing uses within this district include an automobile dealership, bowling alley, motel, and warehouse. Directly west of plaintiffs' parcel is an undeveloped parcel owned by the defendant city.[3] Further west is undeveloped forest land. Bordering the subject property on the east is a small subdivision of single family homes; three homes front the

[1] Appellate courts review zoning cases *de novo. Biske v City of Troy,* 381 Mich 611; 166 NW2d 453 (1969).

[2] The record indicates Mr. DeHaan receives no remuneration for his services to Deltowne.

[3] Plaintiffs had planned to purchase this small parcel of property for use in their proposed development.

plaintiffs' parcel. Bordering on the southwest is Parkway Estates subdivision which is comprised of 35 to 40 homes. Further south of Parkway Estates are, among other things, three apartment buildings situated in a Class C or commercial district. Southeast of the involved property is an open field owned by the public school system; the high school is located east of this field.

The 18-acre subject property is presently zoned Class A residential. This classification would permit use of land for colleges, golf courses, churches, and clubs, as well as single family homes. Instant plaintiffs point out that mobile homes may be located in Class A residential districts provided they are placed on foundations. Multiple dwelling use has been traditionally allowed in Class C or commercial districts. In order to permit greater flexibility and variety in community development with emphasis on aesthetic and efficient land use, defendant enacted ordinance number 567 early in 1972. This ordinance creates a new type zoning classification termed planned-unit development or Class C-2 districts. Multiple as well as single family dwellings are allowed within a district designated Class C-2. Development is under the direction and control of the city planning commission and city council.

Instant plaintiffs sought to have their property rezoned from Class A residential to Class C-2. Pursuant to ordinance 567, Deltowne submitted a preliminary plan to the city planning commission for the construction of a 175-unit complex of townhouses and apartments. The city engineer prepared a report for the commission, stating that Deltowne's plan conformed with the ordinance's requirements. Public hearings were held, and on October 11, 1973, the planning commission re-

jected the plan and rezoning proposal of Deltowne due to no apparent need for this type of housing, concern over traffic and safety, and because it was in the "public interest".

Deltowne appealed to the city council. At the same time, it requested the land be rezoned Class C. On October 18, 1973, the city council by a 3-2 margin determined that the property should remain Class A residence for the reasons "set forth in the Planning Commission's minutes which were thoroughly aired at public hearings, and specifically those reasons of traffic, safety, congestion and development of the surrounding area as Class A residential property".

Plaintiffs filed a complaint in circuit court to enjoin defendant from enforcing its allegedly unconstitutional zoning ordinance which prohibits the legitimate use of their property.

At trial on January 4, 1974, plaintiffs called as witnesses the city engineer, the architect of Deltowne's planned-unit development, the manager of new development for the Michigan Housing Development Authority, an urban planner with the Central Upper Peninsula Planning and Development Regional Commission, and Mr. DeHaan. Proofs presented by plaintiffs which are relevant to our disposition of the case may be summarized as follows.

Defendant's zoning plan consists of a map formulated in 1949 with a two-page amendment made in 1962. By ordinance, property not otherwise designated, *i.e.,* Class C, F and so forth, is deemed Class A residential. The city has an overabundance of land designated Class A residential. It is currently economically unfeasible to develop single family homes on plaintiffs' property. Many of the few Class C districts are completely devel-

oped; one five-acre parcel is apparently unsuitable for development due to water table difficulty. There are no C-2 districts within the city.

Plaintiffs have submitted an extensive plan for creation of an aesthetically pleasing housing development which complies with the requirements of the Planned-Unit Development Ordinance (Or 567). The units would be mostly townhouses with some apartments, and would serve as a good transitional zone between uses to the north and the residential area to the south of the parcel. The proposed development is not low cost housing, would be compatible, even complementary, to the area, and plans call for setting up an escrow account to assure continued maintenance of units. No structure would be more than two stories, and the development would have a park, playgrounds, landscaped areas, and a community building.

There has been considerable change in the area around plaintiffs' parcel since adoption of the 1949 zoning plan and 1962 amendments. The community needs multiple dwelling units, especially for elderly citizens. Plaintiffs' development calls for a minimum of 25% of the units for the elderly.

Plaintiffs' planned-unit development would have no adverse impact on city services. The site is served by city water, sewer and fire protection. The roads in the area would provide adequate access to and from the complex, and the proposed development is designed to discourage traffic because no streets will run through the entire complex. Under existing use restrictions, development of 84 units for single family homes is possible. The record indicates that Deltowne plans to initially construct 100 units with the remaining being developed apparently when the constructed units are rented out.

Defendant's sole witness was an attorney representing many of the homeowners bordering the plaintiffs' parcel. He testified that residents in the area feel they have relied upon Class A residential zoning in constructing their homes, that plaintiffs' development would be detrimental to the value of their property, and they are concerned about density and traffic problems.

On April 16, 1974, the trial court rendered an opinion in favor of defendant. While making few specific findings of fact, and relying primarily upon the Supreme Court opinion in *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), the trial court concluded *inter alia* that "[w]hile the Plaintiffs have presented a strong case in support of their argument for rezoning, they have not, in my opinion, met their burden of proof to establish that the City acted arbitrarily or capriciously".

On appeal, counsel for plaintiffs has submitted a most impressive brief attacking the constitutionality of defendant's zoning ordinance as applied to their property. Plaintiffs contend the use restriction is confiscatory and violative of substantive due process and equal protection. Defendant maintains that the question is whether the planning commission and the city council acted in an arbitrary and capricious fashion in denying plaintiffs' rezoning request, and, even more basic, whether the City of Escanaba is to be planned by elected city officials or the courts.

The judiciary's role in reviewing zoning matters is currently in a confused state. *Turkish v City of Warren,* 61 Mich App 435; 232 NW2d 732 (1975). Prior to the Supreme Court opinion in *Kropf v Sterling Heights,* 391 Mich 139; 215 NW2d 179 (1974), various panels of this Court applied the doctrine of "favored use" in cases involving multi-

ple dwellings, and shifted the burden of proof to the municipality to show a use exclusion was neither arbitrary, capricious nor unreasonable. The *Kropf* Court wiped out "favored use", ruling that the proper standard was one of reasonableness of the present use with the burden of showing unreasonableness placed on the individual challenging the use restriction. Justice LEVIN wrote a concurring opinion in *Kropf.* He viewed action on a request for rezoning as administrative in nature, and believed that the test should be the reasonableness of the proposed use, not the existing use. Under this approach, proofs would be presented before the zoning board and a record established for the court's review. Judicial review would be limited to whether the evidence supports the administrative finding on the question of whether the proposed use is reasonable.

A three-to-two majority of the Supreme Court recently adopted the approach set forth by Justice LEVIN in a trilogy of zoning cases. *Sabo v Monroe Twp,* 394 Mich 531; 232 NW2d 584 (1975), *Smookler v Wheatfield Twp,* 394 Mich 574; 232 NW2d 616 (1975), *Nickola v Grand Blanc Twp,* 394 Mich 589; 232 NW2d 604 (1975). Moreover, six members of the Supreme Court in *Werkhoven v City of Grandville,* 395 Mich 753; 232 NW2d 671 (1975), remanded a zoning case back to a panel of this Court for reconsideration in light of the opinions of the Justices in the above-stated cases. In reversing the trial court, and sustaining the use restriction on plaintiffs' property, the Court of Appeals in *Werkhoven* had relied in part on the majority opinion in *Kropf, supra.*

In *Ettinger v Avon Township,* 64 Mich App 529; 236 NW2d 129 (1975), this Court recently recognized that:

"Justice LEVIN'S approach, though gathering strength, does not yet represent the current jurisprudential law in Michigan. While the viewpoint gathered three votes in *Sabo,* this is still not a majority of the Court. Where no opinion is endorsed by a majority of the members elected to the Supreme Court, the result is not binding as precedent. *In re Curzenski Estate,* 384 Mich 334, 335; 183 NW2d 220 (1971)."

*Ettinger* also noted that until the Supreme Court clarifies the matter further it remains uncertain whether the LEVIN standard would require proof of the reasonableness of the proposed use alone, or would it require proof that the proposed use is more reasonable than the existing use. See also Lax, *1974 Annual Survey of Michigan Law, Local Government,* 21 Wayne L Review 577, 583–585 (1975),[4] for comments raising other questions as to the proposed standard.

Be that as it may, we need not predict whether the *Sabo* or the *Kropf* standard either will or should ultimately prevail. Under either approach, we conclude plaintiffs should have been permitted to use its property under a C-2 classification. Unequivocally, instant plaintiffs have shown that their proposed use is reasonable in light of all the circumstances. Moreover, they have affirmatively established by unrebutted testimony that the reasons given for not granting the rezoning request

[4] "Rather than having the decision-maker ask whether the proposed use is reasonable and thus requires rezoning, one could, for example, adopt a substantive rule whereby rezoning could not be granted unless the proposed use is clearly more appropriate than the existing permitted uses. Another possibility is that rezoning could not be granted unless the existing permitted uses are unreasonable. * * * If the supreme court decides that rezoning should be handled administratively—a decision that would send shock waves through innumerable legislative bodies—care should be taken to distinguish between the procedural consequences of such a decision and the substantive standards by which the administrative proceedings are to be governed." (p. 585)

are without foundation. Plaintiffs have effectively overcome the presumption of validity accorded the defendant's actions by meeting the second standard of substantive due process set forth in *Kropf, supra:* "an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question". 391 Mich at 158.

Plaintiffs have prepared plans for an aesthetically pleasing residential development which will benefit the entire community, *owing to a need for such housing,* particularly among senior citizens. Nothing in the record established that the development would cause traffic problems. The proofs are otherwise. In light of testimony that the development would complement the area, meet the high standards required by defendant's Planned-Unit Development Ordinance, and would be continually maintained through an escrow fund, fears of single family homeowners concerning property devaluation are not borne out by the record. Further, higher density *per se* ought not be determinative in denying or permitting a rezoning request. Indeed, the *Kropf* Court indicates that, without more, density is irrelevant to the question of the reasonableness of a use restriction. Finally, the reasons cited by the majority opinion in *Kropf* that might support upholding a municipality's action prohibiting use of land for apartment construction, *viz.* monopolization of the sun's rays, interference with free circulation of air, and depriving children of quiet and open spaces, are nonexistent under plaintiffs' proposed development, which must comply with the requirements under the Planned-Unit Development Ordinance.

Granted one's use of his property is subject to the police powers of the state in order to promote

the common good, a real and substantial nexus must exist between the use restriction and the valid exercise of that power. Moreover, although courts presume that action by a municipality in restricting land use is valid, we afford the property owner an opportunity to overcome that presumption. Plaintiffs have borne their burden by establishing through the testimony of highly competent witnesses that defendant's denial of their request for a C-2 designation constituted action without legitimate reason. The only testimony offered by defendants was that of the attorney who represented residential owners opposing the proposed development.[5]

The lower court judgment in favor of defendant is reversed, and defendant is hereby enjoined from prohibiting plaintiff, Deltowne, from proceeding with its proposed use under the Planned-Unit Development Ordinance. Because we are confident that defendant will act in good faith in overseeing construction of plaintiffs' proposed project for the object of assuring compliance with the just mentioned ordinance, we retain no further jurisdiction.

Reversed, No costs, a public question being involved.

---

[5] Defendant also offered in evidence the official minutes of the planning commission which, in part, contained statements of individuals opposing the proposed zoning change. Although plaintiff, by stipulation, agreed to introduction of said minutes, plaintiff did not agree to accept the personal opinions expressed therein.