BIERMAN v TOWNSHIP OF TAYMOUTH

Docket No. 82097. Submitted October 10, 1985, at Lansing.—Decided December 3, 1985. Leave to appeal applied for.

Donald and Johanna Bierman requested in the spring of 1979 a special use permit from the Taymouth Township Zoning Board so that they might use a portion of their property located in Taymouth Township, Saginaw County, as a junkyard. The request was denied on the ground that they could not comply with the requisite setback requirement contained in the township zoning ordinance. In the fall of 1979, the Biermans, after acquiring some additional property, filed with the township zoning board a request that their property be rezoned from agricultural to intensive industrial and that a special use permit for junkyard operation be granted. That request was also denied. In June, 1980, the Biermans filed a request to rezone the property from agricultural to industrial, again with a special use permit for junkyard operation. The Taymouth Township Board denied the request, holding that the proposed use was not compatible with adjacent agricultural land use, that there were already adequate junkyard facilities in the township and surrounding areas and that there was a need to avoid increased traffic on the unimproved secondary road on which the property was located. The Biermans filed a complaint in Saginaw Circuit Court against the Township of Taymouth, the Taymouth Township Board, the Taymouth Township Zoning Board and the Taymouth Township Planning Commission, alleging that the township zoning ordinance was unconstitutional as applied to their property and seeking in-

REFERENCES

Am Jur 2d, Appeal and Error §§ 880 et seq.

Am Jur 2d, Witnesses §§ 656 et seq.

Am Jur 2d, Zoning and Planning §§ 11 et seq., 134, 135, 322 et seq.

Validity, construction, and effect of agreement to rezone or amendment to zoning ordinance, creating special restrictions or conditions not applicable to other property similarly zoned. 70 ALR3d 125.

Validity, construction, and application of zoning ordinance relating to operation of junkyard or scrap metal processing plant. 50 ALR3d 837.

junctive relief which would permit plaintiffs to use their property as a junkyard. The trial court, Fred J. Borchard, J., declared the zoning ordinance unconstitutional as applied to plaintiffs, basing this conclusion upon the finding that the land could not economically be used for any use permitted under the zoning ordinance. Defendants appealed. *Held:*

1. The portion of the subject property which is not swampy could be economically used either as agricultural land or for single family homes, both of which are permitted under the present agricultural zoning classification.

2. While the portion of the property which is swamp cannot economically be used for the uses permitted under the agricultural zoning classification, that swampy condition is the result of the sand and gravel mining operations conducted by plaintiffs' predecessor in title. A zoning ordinance does not become an arbitrary restriction upon an owner's use of the land where the predecessor in title of the owner voluntarily disrupted the natural condition of the land so as to make it useless in its resulting state. Accordingly, the zoning ordinance at issue did not unconstitutionally deprive plaintiffs of the use of their property.

3. A reasonable basis exists for excluding junkyards while permitting landfills and incinerators by special permit in agricultural districts.

4. The zoning ordinance under which plaintiffs' request for rezoning was made contained delineated specific standards which were to be used in determining whether to grant a special use permit. Thus, there was no improper delegation of a legislative function.

Reversed.

1. APPEAL — EQUITY — WITNESSES — CREDIBILITY.

The Court of Appeals is inclined to give considerable weight to the findings of the trial judge in equity cases primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity; even though review is *de novo,* the Court of Appeals does not ordinarily disturb the findings of the trial judge in an equity case, unless, after an examination of the entire record, it reaches the conclusion that it would have arrived at a different result had it been in the position of the trial judge.

2. ZONING — REASONABLENESS — GOVERNMENTAL INTEREST.

The correct test for judicial review of requested zoning changes is

that the plaintiff requesting rezoning must show: first, that there is no reasonable governmental interest being advanced by the present zoning classification itself, or, second, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.

3. ZONING — ORDINANCES.

A zoning ordinance comes to the Supreme Court clothed with every presumption of validity.

4. ZONING — ORDINANCES — BURDEN OF PROOF — REASONABLENESS.

It is the burden of the party attacking a zoning ordinance to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property; it must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness.

5. ZONING — ORDINANCES — REASONABLENESS.

An aggrieved property owner, to sustain an attack on a zoning ordinance, must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted.

6. ZONING — ORDINANCES — REASONABLENESS — VOLUNTARY DISRUPTION OF NATURAL CONDITIONS.

A properly adopted zoning ordinance does not become an arbitrary and unreasonable restriction on the owner's use of the land where the owner or the owner's predecessors in title have voluntarily disrupted the natural condition of the land so as to make it useless in its resulting state.

7. ZONING — JUNKYARDS — LANDFILLS — INCINERATORS.

A reasonable basis exists for excluding junkyards from an area zoned as an agricultural district while at the same time allowing in such district, by special permit, landfills and incinerators.

*Dwan & Schmidt, P.C.* (by *H. Michael Dwan),* for plaintiff.

*Jack E. Kerr,* for defendants.

Before: J. H. GILLIS, P.J., and CYNAR and R. L. EVANS,* JJ.

PER CURIAM. Defendants appeal as of right from a November 28, 1984, order through which portions of the defendants' zoning ordinance were held unconstitutional as applied to plaintiffs' property.

Plaintiffs, who live on Elms Road in Birch Run, Michigan, desired to use a portion of their property as a junkyard. In the spring of 1979, they requested a special use permit from the Taymouth Township Zoning Board. The request was denied on the ground that plaintiffs did not have a 200-foot set-back as required by the local zoning ordinance.

In the fall of 1979, after having acquired 20 acres of adjacent land, plaintiffs filed a request with the zoning board to have the property rezoned from A-1, agricultural, to M-2, intensive industrial, with a special use permit for junkyards, pursuant to the Taymouth Township Rural Zoning Ordinance. The request was denied.

In June 1980, plaintiffs filed another request for a zoning change, this time requesting that the land be rezoned from A-1, agricultural, to M-1, industrial, again with a special use permit for junkyards. After a hearing on the matter, the request was denied in December 1980. The Township Board based its denial of the request upon the following factors: 1) the use was not compatible with adjacent agricultural land use and was not in compliance with the future township land-use plans; 2) there were already adequate junkyard facilities in the township and in surrounding areas; and 3) there was a need to avoid increased

* Recorder's court judge, sitting on the Court of Appeals by assignment.

traffic on the unimproved secondary road on which the property was located.

On December 11, 1980, plaintiffs filed a complaint against defendants in the Saginaw County Circuit Court, requesting, among other relief, that the court enjoin defendants from enforcing the zoning ordinance against plaintiffs and order defendants to change plaintiffs' zoning designation to allow use of the property as an auto salvage yard. After trial, the trial court issued an opinion declaring the ordinance unconstitutional as applied to the plaintiffs. The court based this conclusion upon its findings that the land could not be used effectively in any manner permitted under the ordinance, thus rendering any development economically unfeasible. Further, the trial court held that use of the land as a junkyard could not adversely affect the township's morals, health or safety. Defendants appeal as of right from the trial court's order.

Our review of zoning cases, although *de novo*, is conducted with the following guidelines in mind:

"This Court, however, is inclined to give considerable weight to the findings of the trial judge in equity cases. This is primarily because the trial judge is in a better position to test the credibility of the witnesses by observing them in court and hearing them testify than is an appellate court which has no such opportunity. We do not ordinarily disturb the findings of the trial judge in an equity case, unless, after examination of the entire record, we reach the conclusion we would have arrived at a different result had we been in the position of the trial judge." *Kropf v City of Sterling Heights,* 391 Mich 139, 163; 215 NW2d 179 (1974), quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962).

The appropriate standard for determining the constitutional validity of a zoning ordinance set forth

in *Kropf, supra,* was outlined concisely in *Kirk v Tyrone Twp,* 398 Mich 429, 439-440; 247 NW2d 848 (1976), as follows:

"The principles and tests to use to determine whether the present zoning of plaintiffs' property is valid was detailed in *Kropf.*

"The important principles require that for an ordinance to be successfully challenged plaintiffs prove:

" '[F]irst, that there is no reasonable governmental interest being advanced by the present zoning classification itself * * * or

" '[S]econdly, that an ordinance may be unreasonable because of the purely arbitrary, capricious and unfounded exclusion of other types of legitimate land use from the area in question.' 391 Mich 139, 158.

"The four rules for applying these principles were also outlined in *Kropf.* They are:

"1. ' "[T]he ordinance comes to us clothed with every presumption of validity." ' 391 Mich 139, 162, quoting from *Brae Burn, Inc v Bloomfield Hills,* 350 Mich 425; 86 NW2d 166 (1957).

"2. ' "[I]t is the burden of the party attacking to prove affirmatively that the ordinance is an arbitrary and unreasonable restriction upon the owner's use of his property * * *. It must appear that the clause attacked is an arbitrary fiat, a whimsical *ipse dixit,* and that there is no room for a legitimate difference of opinion concerning its reasonableness." ' 391 Mich 139, 162, quoting *Brae Burn, Inc.*

"3. ' "Michigan has adopted the view that to sustain an attack on a zoning ordinance, an aggrieved property owner must show that if the ordinance is enforced the consequent restrictions on his property preclude its use for any purposes to which it is reasonably adapted." ' 391 Mich 139, 162-163.

"4. ' " This Court, however, is inclined to give considerable weight to findings of the trial judge in equity cases." ' 391 Mich 139, 163, quoting *Christine Building Co v City of Troy,* 367 Mich 508, 518; 116 NW2d 816 (1962)."

Applying these standards to the case before us, we conclude that the trial court erred in finding the defendants' zoning ordinance unconstitutional as applied to plaintiffs. The ordinance permitted the following uses of the property as of right: 1) single-family dwellings; 2) general farming and forestry; 3) specialized farming; and 4) public and private conservation areas and structures. The physical characteristics of the land, as testified to by plaintiff Johanna Bierman, were as follows. As a result of sand-mining operations conducted by Mrs. Bierman's grandfather, who was a predecessor in title to the land, approximately one-half of the land is a swamp which presently sustains only weeds and quack grass. However, plaintiffs' home is located on the other half of the land and, at the time of trial, the land was being utilized for farming purposes. Further, Mrs. Bierman testified that the land was suitable for building additional houses. Moreover, although the property was located near the I-75 expressway and the noise from semi-tractor trailers shifting gears could be heard from plaintiffs' home, Mrs. Bierman admitted that, notwithstanding the existence of the expressway, several substantial homes had been built in the area within the past ten years. Further, plaintiffs chose to build their home on the property in the early 1970's even though the expressway had been there since 1956. Based upon this evidence, we believe that the portions of the land which did not consist of swamp area were fully adapted to the uses authorized by the ordinance, especially residential dwellings and farming. We therefore cannot conclude that the ordinance is "an arbitrary and unreasonable restriction on the owner's use of his property". *Kropf, supra,* p 162.

The testimony describing the swamp area, on the other hand, reveals it to be much less suscepti-

ble to development than the remainder of the land. However, we note from the record that the swamp-like condition of the land was caused not by nature, but rather by the actions of Mrs. Bierman's grandfather, the predecessor in title, when he conducted a sand-mining operation on the property. We are therefore not presented with a situation where a zoning ordinance renders the land, in its natural condition, unadaptable to any reasonable use permitted by the ordinance. Rather, the affirmative actions of the previous owners have changed the basic nature of the property from that capable of agricultural adaptation to a swamp which, in its present form, is useless to the plaintiffs. Thus, this case is similar to *Johnson v Robinson Twp*, 420 Mich 115; 359 NW2d 526 (1984), where the plaintiffs sought a variance from the defendant's zoning ordinance in order to permit construction of a residence on their undersized lot. However, the lot was originally combined with two others to form a much larger parcel of land which was owned by the plaintiff's grandfather. This larger lot was intentionally split into three smaller parcels by the plaintiff's family. 420 Mich 117. Based upon these facts, the Supreme Court concluded that the local zoning board of appeals properly denied the requested variance since "the only practical difficulty or hardship is one that was produced by the plaintiff's family". 420 Mich 126. The Court concluded:

"The zoning ordinance preceded the division of this property. Thus the plaintiffs' problems were not caused by the township, but were caused by the division. Since, prior to the split, this land was being properly used in conformance with the zoning ordinance, we can see no sense in which the township can be said to have unconstitutionally deprived the plaintiffs of their property rights." 420 Mich 126.

We believe the same result is mandated here. If, as plaintiffs claim, there land cannot be utilized in its present condition for any of the uses permitted under the ordinance, they have no one to blame but their grandfather. A properly adopted zoning ordinance does not become an arbitrary and unreasonable restriction upon an owner's use of his or her land simply because they or their predecessors in title have voluntarily disrupted the natural condition of the land so as to make it useless in its resulting state. We conclude that the defendants have not unconstitutionally deprived plaintiffs of the use of their property through the restrictions imposed by the ordinance at issue.

Plaintiffs also argue that the ordinance has "no reasonable basis for its very existence", *Robinson Twp v Kroll,* 410 Mich 293, 312; 302 NW2d 146 (1981), quoting *Kropf, supra,* and supports this claim with the fact that junkyards are excluded, while sanitary landfills and incinerators are allowed by special use permit. In fact, the zoning ordinance permits the following uses of land by special use permit in addition to those cited by plaintiffs: public parks and recreation areas, institutions for human care, religious institutions, sand, gravel, and clay pits, greenhouses and nurseries, production of furbearing animals for profit, seasonable labor housing associated with agricultural enterprises, grain and seed elevators and sales, education and social institutions, public buildings, riding stables and livestock auction yards, and veterinary hospitals, clinics and kennels. However, we are of the opinion that the ordinance is not unreasonable due to the allowance of these special uses and the exclusion of junkyards, since a distinction exists between the latter and those uses listed. The permitted uses can be characterized either as a form of govern-

ment service provided to citizens out of necessity or as commercial enterprises closely related to the agricultural and forestry industries. In contrast, a junkyard is simply a general commercial business established for profit having no connection to agriculture or forestry. Junkyards thus fall into the general commercial enterprise category which the zoning ordinance was designed to exclude from A-1 districts in order to protect, enhance and stabilize food and fiber production areas. We conclude that a reasonable basis exists for excluding commercial enterprises such as junkyards from agricultural districts while at the same time allowing limited public services such as landfills and incinerators.

Finally, plaintiffs claim that the zoning ordinance as enacted in 1972 failed to include any guidelines for the zoning board's use in deciding whether to grant or deny a special use permit request and is thus invalid pursuant to *Osius v St Clair Shores,* 344 Mich 693; 75 NW2d 25 (1956). See also *Bruni v Farmington Hills,* 96 Mich App 664; 293 NW2d 609 (1980). We find the argument to be without merit since the plaintiffs did not request a special use permit until July of 1979, subsequent to an amendment of the ordinance enacted April 1, 1979, which delineated specific standards to be used by the zoning board. It cannot be said, then, that the Zoning Board of Appeals was permitted through this ordinance to exercise, by delegation, a legislative function without guidelines or standards. *Osius, supra,* p 697; *Bruni, supra,* p 668. The order of the trial court finding the ordinance unconstitutional as applied to the plaintiffs is reversed.

Reversed.