# STATE OF MICHIGAN

# COURT OF APPEALS

CITY OF DETROIT,

        Petitioner-Appellant,

v

CITY OF DETROIT BOARD OF ZONING
APPEALS,

        Respondent-Appellee,
and

INTERNATIONAL OUTDOOR INC.,

        Intervenor-Appellee.

FOR PUBLICATION
October 23, 2018
9:15 a.m.

No. 339018
Wayne Circuit Court
LC No. 16-001949-AA

Before: CAMERON, P.J., and RONAYNE KRAUSE and TUKEL, JJ.

CAMERON, P.J.

The City of Detroit (the City) appeals the circuit court order affirming the decision of the City of Detroit Board of Zoning Appeals (the BZA) to grant a use variance to International Outdoor Inc. (IO) for the erection of a billboard. On appeal, the City argues the BZA did not have the authority to grant a use variance in an area of Detroit designated as the Grand Boulevard overlay zone, which bans off-site advertising signs. Even if the BZA did have the authority, the City argues IO could not prove the ordinance imposed an unnecessary hardship because it "purchased the hardship," i.e., it purchased the property with knowledge that the ordinance banned off-site advertising signs. We conclude that the BZA had the authority to grant a use variance in the overlay zone, and the BZA did not err when it granted IO's request for a use variance based on unnecessary hardship. Because neither IO nor its predecessor in title created the hardship by partitioning, subdividing, or otherwise physically altering the land after the enactment of the ordinance, the BZA could grant the use variance. Therefore, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In 1999, the City amended its zoning ordinance to ban off-site advertising signs in a portion of the City referred to as the Grand Boulevard overlay zone. Detroit Zoning Code, § 61-6-65. In 2011, IO purchased a small parcel of vacant property in Detroit that was located within the overlay zone and was zoned as a B4 general business district. The property measured 30 feet

-1-

wide and 184 feet long with an area of 5,520 square feet. In 2015, IO submitted an application for a permit to erect a billboard on the property. The City's planning department denied the application, referencing the Grand Boulevard overlay zone.

IO appealed to the BZA, seeking a hardship variance.[1] IO claimed the City's ordinance scheme rendered the property unfit for any reasonable or economically feasible use due to its size and shape. IO's assertion was not disputed, but at the BZA hearing, several board members expressed their concern that IO, as a billboard company, purchased the property with the intent of one day erecting a billboard, though it knew the property was located within the overlay zone. IO's attorney explained that "there is no feasible or economic or functional use of this property because of the size," and no one "will be able to put any use on this; it would not meet parking, would not meet open space, landscaping, any type of requirement this site could not meet." Instead, IO's attorney asserted, the only possible uses for the property would be to either erect a billboard or a cell tower—neither of which was currently allowed on the property. One board member also questioned whether the BZA had the authority to grant a variance in an overlay zone—which might have higher authority over other ordinances. In response, IO's attorney explained that "[i]t's not higher; it is an ordinance, period. It is not a statute . . . . If you applied that standard, then there would be no such thing as a dimensional or a hardship variance, you would always say, that's what the code says, . . . we're inflexible to it." Another board member interjected and asserted the BZA's purpose is to consider when to "override the overlay districts and the signs." Before turning to a vote, a third board member made one final observation:

> Just, before we get a motion on the floor, the observation that I want to make clear here is that if we were to approve this as a hardship, virtually any property developer, um, in -- virtually any property developer in the city could purchase a subsection of a piece of land in an overlay district and claim that they have a hardship because there is no other use that they can make of this land other than whatever it is that they bought it for; in this case, a billboard. . . . I think that what this does is it creates a precedent that virtually obsolesces the concept of an overlay.

Ultimately, the BZA voted to grant the variance, and the City appealed that decision to the circuit court.[2]

The circuit court affirmed the BZA's decision. In its holding, the court explained that while IO bought the property with knowledge of the ban on off-site advertising signs, there was no evidence that IO took any action that physically altered the property, creating the hardship now at issue. According to the court, "[c]urrent Michigan law does not support [the City's]

---

[1] IO also requested a dimensional variance for the height of the proposed billboard. Eventually, IO agreed to lower the height of the billboard so that it complied with Detroit's height requirements. The City raises no claim related to the site plan of the proposed billboard.

[2] The City did not include IO in its pleadings on appeal to the circuit court. After the appeal was filed, IO filed a motion to intervene, which was granted.

argument that the Self-Created Hardship Rule bars [IO's] variance request and the [c]ourt declines to expand Michigan law at this time." The City now appeals the circuit court's decision, claiming the BZA did not have the authority to grant the variance in an overlay zone, and even if it did, IO's act of purchasing the property created the hardship at issue.

## II. STANDARD OF REVIEW

We review de novo the underlying interpretation and application of an ordinance. *Great Lakes Society v Georgetown Charter Twp*, 281 Mich App 396, 407; 761 NW2d 371 (2008). MCL 125.3606 provides, in pertinent part, the standard used to review the decision of a zoning board of appeals:

> (1) Any party aggrieved by a decision of the zoning board of appeals may appeal to the circuit court for the county in which the property is located. The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:
>
> (a) Complies with the constitution and laws of the state.
>
> (b) Is based upon proper procedure.
>
> (c) Is supported by competent, material, and substantial evidence on the record.
>
> (d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals. [MCL 125.3606(1)(a), (1)(b), (1)(c), and (1)(d).]

In other words, "[t]he decision of a zoning board of appeals should be affirmed unless it is contrary to law, based on improper procedure, not supported by competent, material, and substantial evidence on the record, or an abuse of discretion." *Janssen v Holland Charter Twp Zoning Bd of Appeals*, 252 Mich App 197, 201; 651 NW2d 464 (2002); see also MCL 125.3606(1).

## III. THE BZA'S AUTHORITY TO GRANT THE USE VARIANCE

Initially, the question turns on whether the BZA had authority to grant a use variance in the overlay zone. After review of the prevalent statutes and case law, we conclude that the BZA had the authority to grant IO's variance request. MCL 125.3604 defines a board's authority to grant a use variance, providing, in pertinent part:

> (7) If there are practical difficulties for nonuse variances as provided in subsection (8) or unnecessary hardship for use variances as provided in subsection (9) in the way of carrying out the strict letter of the zoning ordinance, the zoning board of appeals may grant a variance in accordance with this section, so that the spirit of the zoning ordinance is observed, public safety secured, and substantial justice done.

\* \* \*

(10) The authority granted [to cities and villages under this ordinance] is subject to the zoning ordinance of the local unit of government otherwise being in compliance with subsection (7) and having an ordinance that requires a vote of 2/3 of the members of the zoning board of appeals to approve a use variance.

(11) The authority to grant use variances [to cities and villages under this ordinance] is permissive, and this section does not require a local unit of government to adopt ordinance provisions to allow for the granting of use variances. [MCL 125.3604(7), (10), and (11).]

We have held that "[a] township board of zoning appeals has the authority to vary or modify *any* zoning ordinance to prevent unnecessary hardship if the spirit of the ordinance is observed, the public safety if secured, and substantial justice is done." *Janssen*, 252 Mich App at 201 (emphasis added).

At issue in this case is Detroit's ordinance banning advertising signs within the Grand Boulevard overlay zone:

**Sec. 61-6-65.    Advertising signs within the area bounded by Grand Boulevard.**

It shall be unlawful to construct, erect, paint, fasten, or affix any new advertising sign, whether billboard or painted wall graphic, on any zoning lot abutting or within the area bounded by East Grand Boulevard, the Detroit River, and West Grand Boulevard.  This prohibition in no way limits the right to periodically alter the advertising display on billboards approved for "changeable copy" or to repaint the display on duly licensed painted wall graphics.  No lawfully existing advertising sign within said area shall be enlarged or expanded, except upon approval of the Board of Zoning Appeals as provided for in Sec. 61-15-16 of this Code. [Detroit Zoning Code, § 61-6-65.]

With this backdrop, we acknowledge that the BZA has broad power under Detroit's ordinances to provide relief for any landowner who proves an economic hardship:

**Sec. 61-4-127.  Additional forms of relief.**

The Board of Zoning Appeals may adopt any legally available incentive or measure that is reasonably necessary to offset any denial of reasonable economic use, and may condition such incentives upon approval of specific development plans.  Where the Board of Zoning Appeals finds that the denial of the application would create a substantial economic hardship, the Board may consider additional relief to provide an appropriate increase in market value or other benefit or return to the petitioner sufficient to offset the denial of all reasonable economic use.  The types of incentives that the Board of Zoning Appeals may consider include, but are not limited to, the following:

\* \* \*

-4-

(3) Allow the establishment of a prohibited use, provided, that the petitioner demonstrate none of the permitted or Conditional Uses in the zoning district is economically feasible. [Detroit Zoning Code, § 61-4-127(3).]

The BZA can provide relief necessary to resolve an economic hardship due to an ordinance, so long as no other permitted or conditional use is economically feasible. Nothing in Detroit's ordinances prohibits the BZA from granting a use variance in the Grand Boulevard overlay zone, and as stated in *Janssen*, 252 Mich App at 201, a board "has the authority to vary or modify *any* zoning ordinance to prevent unnecessary hardship." (Emphasis added.) The purpose and intent of Detroit's zoning code is "to guide and regulate the appropriate use or development of all land in a manner which will promote and protect the public health, safety, and general welfare." Detroit Zoning Code, § 61-1-4. To bar the BZA outright from granting any variances in the overlay zone may interfere with the purpose and intent of the zoning code. And contrary to the City's assertions, the BZA has not usurped the power of Detroit's City Council. Rather, Detroit's City Council has granted the BZA broad power through the ordinances to approve use variances when there is unnecessary hardship. Therefore, the BZA had the authority to grant a variance to IO for the erection of a billboard, so long as IO could prove an unnecessary hardship.

The dissent concludes that the BZA "did not have the authority to grant the [hardship] variance at issue." In reaching this conclusion, the dissent acknowledges that Detroit Zoning Code, § 61-4-103 governs hardship variances and gives the BZA discretion to grant or deny a landowner "relief." The dissent argues, however, that the variance granted in this case contravenes the "spirit, purpose, and intent of the zoning ordinance" as set forth in Detroit Zoning Code, Sec 61-4-81, which establishes ten criteria for variances and administrative adjustments. Specifically, the dissent claims:

[P]ermitting an off-site advertising sign would not merely be a grant of leeway for a technical violation. Rather it would outright 'permit the establishment, within the zoning district, of [a] use which is prohibited within the district.' Consequently, the use variance here could not possibly comport with all ten of the criteria mandated by § 61-4-81.

We believe the dissent's focus on § 61-4-81 is misplaced. While this provision establishes the general standard for any variance, Detroit's zoning code also establishes specific standards for variances based on "substantial economic hardship." That is the type of variance at issue here. Detroit Zoning Code, § 61-4-127, provides "[a]dditional forms of relief" for hardship relief petitions, which expressly grants the BZA power to "adopt any legally available incentive or measure that is reasonably necessary to offset any denial of reasonable economic use," including "[a]llow[ing] the establishment of a *prohibited use*, provided that the petitioner demonstrate none of the permitted or Conditional Uses in the zoning district is economically feasible." § 61-4-127(3) (emphasis added).

In this case, the BZA did just that. It went through the factors as required under § 61-4-81, found no other permitted or Conditional Use, and concluded that the overlay would deprive the property of all reasonable economic use. The city council, as Detroit's legislative body, expressly authorized the BZA to grant any request based on hardship in order to effectuate the

use of land in a manner that promotes and protects the public health, safety, and general welfare. The BZA recognized that this property has no other reasonable economic use, and denying the variance would perpetuate a hardship caused by Detroit's ordinances. Moreover, preventing *any* development of property does not promote the general welfare and arguably raises constitutional concerns. See Detroit Zoning Code, § 61-4-102 (applicants must have "a protectable interest in property under the Fifth Amendment to the United States Constitution and under the 1963 Michigan Constitution"). To allow legislation, such as the Grand Boulevard Overlay, to deprive a property owner of all use of property would certainly raise concerns under the Fifth Amendment, and Detroit's zoning ordinances give the BZA authority to grant a hardship variance in this case.

Lastly, we believe the dissent's application of the rule of *expressio unius est exclusio alterius* to interpret the Grand Boulevard Overlay under § 61-6-65 is unpersuasive. The last sentence under § 61-6-65 addresses "lawfully existing advertising signs" in the overlay zone, i.e., signs that would be considered non-conforming uses, and grants the BZA express power to enlarge or expand such signs pursuant to Detroit Zoning Code, § 61-15-34. Expressly granting the BZA authority to address a nonconforming use in the overlay zone does not, by the dissent's application of *expressio unius*, preclude the BZA's authority to grant hardship relief petitions. Moreover, the overlay ban cannot be interpreted as the dissent suggests because state statute under MCL 125.3604(7) gives the BZA authority to grant use variances based on unnecessary hardships, and §§ 61-4-101 and 61-4-127 authorizes the BZA to grant a petitioner "any legally available incentive or measure" involving "any regulation," including the allowance of a prohibited use, when considering a hardship relief petition. This Court should not apply the rule of *expressio unius* in order to override state statute and the City's properly enacted ordinances. The rule "is a tool to ascertain the intent of the legislature," and it cannot be employed to contradict or vary a clear expression of legislative intent. *Luttrell v Dep't of Corrections*, 421 Mich 93, 107; 365 NW2d 74 (1984). For these reasons, the BZA was authorized to grant a hardship variance within the overlay zone.

## IV. HARDSHIP

The next question turns on whether IO was deprived of all reasonable economic use of the property, and therefore, had proven the ordinance imposed a hardship meriting a use variance. We conclude that IO made a sufficient showing of hardship.

To prove hardship, the BZA had to find on the basis of substantial evidence the following: "(1) the property cannot reasonably be used in a manner consistent with existing zoning, (2) the landowner's plight is due to unique circumstances and not to general conditions in the neighborhood that may reflect the unreasonableness of the zoning, (3) a use authorized by the variance will not alter the essential character of a locality, and (4) the hardship is not the result of the applicant's own actions." *Janssen*, 252 Mich App at 201.

The parties do not dispute the BZA's findings as to the first three elements of the hardship test. There was no argument that the small, unusual parcel at issue could be reasonably used in a manner consistent with existing zoning, that the landowner's plight was due to general conditions in the neighborhood reflecting the unreasonableness of the zoning, or that the use variance would alter the essential character of the locality. Instead, the only contention on

appeal is whether the hardship was the result of the applicant's own actions. This determination turns on the applicability of the "self-imposed" or "self-created" hardship rule.

The City claims that IO created the hardship it now complains of by purchasing the property with the knowledge that off-site advertising signs were prohibited there. We disagree.

We conclude that a zoning board must deny a variance on the basis of the self-created hardship rule when a landowner or predecessor in title partitions, subdivides, or somehow physically alters the land *after* the enactment of the applicable zoning ordinance, so as to render it unfit for the uses for which it is zoned. Zoning boards have broad authority to grant variances to further the purpose and intent of the zoning code. Therefore, we decline to extend the self-created hardship rule to all instances where a landowner simply purchases the property with knowledge of an ordinance's applicable restriction.

Our analysis begins with *Johnson v Robinson Twp*, 420 Mich 115, 126; 359 NW2d 526 (1984), where our Supreme Court concluded that the plaintiffs—as the landowners—were properly denied an area variance because "the only practical difficulty or hardship is one that was produced by the plaintiffs' family." In that case, an ordinance prohibited the construction of buildings on lots that were less than 99 feet wide. *Id*. at 117. Notwithstanding the ordinance, the previous landowners subdivided the property, resulting in a parcel only 60 feet wide. *Id*. That parcel was then transferred to the plaintiff, another family member, who then sought a variance to construct a residence on the undersized lot. *Id*. The zoning board of appeals denied the variance, but the circuit court and the Court of Appeals concluded that the zoning board erred when it denied the variance because the landowners had demonstrated a hardship and "the self-created nature of the lot was irrelevant in this case." *Id*. at 118-119, 121 (quotation marks omitted). However, our Supreme Court reversed and reinstated the board's denial of the variance, holding:

> The zoning ordinance preceded the division of this property. Thus the plaintiffs' problems were not caused by the township, but were caused by the division. Since prior to the split, this land was being properly used in conformance with the zoning ordinance, we can see no sense in which the township can be said to have unconstitutionally deprived the plaintiffs of their property rights. On the facts of this case, neither can it be said that the Zoning Board of Appeals abused its discretion. [*Id*. at 126.]

Stated differently, a land owner is not entitled to a hardship variance if the parcel had a reasonable use under the zoning ordinance and the landowner's subsequent act of splitting the property renders the property unfit for the uses for which it is zoned.

After *Johnson*, this Court issued a number of decisions applying the self-created hardship rule in different contexts. In *Bierman v Taymouth Twp*, 147 Mich App 499, 502; 383 NW2d 235

(1985),[3] we addressed whether the zoning board of appeals properly denied a special-use permit for a junkyard on property zoned for A-1 agricultural. The property at issue had two defining characteristics—a portion that was used for farming and a portion "much less susceptible to development" consisting of a swamp area caused by sand-mining operations by the previous title owner, the plaintiffs' grandfather. *Id*. at 505-506. When addressing the swamp-portion of the property, we upheld the board's denial of a zoning change and concluded that this was not "a situation where a zoning ordinance renders the land, in its natural condition, unadaptable to any reasonable use permitted by the ordinance. Rather, the affirmative actions of the previous owners have changed the basic nature of the property from that capable of agricultural adaptation to a swamp which, in its present form, is useless to the plaintiffs." *Id*. at 507. In reaching our conclusion, we acknowledged the case's factual similarities with *Johnson* and reasoned, like in *Johnson*, that if the landowners' property "cannot be utilized in its present condition for any of the uses permitted under the ordinance, they have no one to blame but their grandfather." *Bierman*, 147 Mich App at 506-507. In other words, the grandfather—not the zoning ordinance—imposed a self-created hardship on the land that followed the successors in title because he "voluntarily disrupted the natural condition of the land so as to make it useless in its resulting state." *Id*. at 507.

In *Cryderman v City of Birmingham*, 171 Mich App 15, 18-19; 429 NW2d 625 (1988), the plaintiffs purchased Lot 92, where they resided, and two adjacent unplatted lots that they used "as a side yard and lawn for their residence on Lot 92." At the time of purchase, a city ordinance prevented the construction of residential buildings on unplatted lots like the plaintiffs' lots. *Id*. at 19. Eventually, the plaintiffs sought a hardship variance that would permit them to sell their two unplatted lots as building sites. *Id*. Their request for a variance was denied, and the circuit court affirmed the BZA's decision. *Id*. at 19-20. This Court, relying on *Johnson*, concluded that "the only practical difficulty or hardship was not caused by the zoning ordinance, but by [the] plaintiffs' decision to sell the Property separately from Lot 92." *Id*. at 22. Thus, the plaintiffs could not properly claim a hardship variance because the Property had a reasonable use as a "side yard" and "lawn" under the applicable zoning ordinance and only the plaintiffs' proposal to develop the property in contravention of the zoning ordinance would result in a self-imposed hardship. Accordingly, we concluded the "BZA did not err in determining that [the] plaintiffs' hardship was self-imposed or in denying [the] plaintiffs' request for a variance on that basis." *Id*.

In *Janssen*, the landowners sought to rezone 100 acres of property from an A-Agricultural Zoning District to an R-1 Single Family Residential Zoning District and to allow the construction of a 250-unit residential development on the property. *Janssen*, 252 Mich App at 198-199. The landowners successfully argued to the zoning board of appeals that the zoning created an unnecessary hardship because rising property taxes caused the land's zoned uses to no longer be economically viable and could "not reasonably be used in a manner consistent with

---

[3] This Court is not bound by its opinions issued before November 1, 1990. MCR 7.215(J)(1). However, earlier Court of Appeals cases may nonetheless be persuasive authority. *DC Mex Holdings LLC v Affordable Land LLC*, 320 Mich App 528, 543 n 5; 907 NW2d 611 (2017).

existing zoning." *Id*. at 199, 201. The circuit court upheld the zoning board's decision, and this Court affirmed. *Id*. at 199, 202. In addressing whether the hardship was self-created, we concluded that the "evidence supports the finding that the hardship is not the result of the applicants' own actions. The increasing taxable value of the property and the comparatively low rental income derived are not 'self-created' burdens." *Id*. at 202-203.

Finally, this Court addressed the "self-imposed hardship rule" in *Wolverine Commerce, LLC v Pittsfield Charter Twp*, unpublished per curiam opinion of the Court of Appeals, issued November 20, 2008 (Docket No. 282532), p 3, (*Wolverine I*), rev'd 483 Mich 1023 (2009). In that case, the plaintiff purchased a large parcel that was zoned agricultural with the intent to have it rezoned to industrial PUD in order to build a business park. *Id*. at 1. After the property was rezoned, but before construction began, the plaintiff realized he made a "very expensive mistake" and sought to have the property rezoned to R3 moderate density residential. *Id*. The zoning board denied his request. *Id*. This Court concluded that the self-imposed hardship rule barred any variance to rezone the property because the plaintiff "*did* cause the property to become zoned for uses to which it is-taking [the] plaintiff's factual assertions as true-unsuited." *Id*. at 3. Thus, while the plaintiff had not physically altered the property's characteristics, this Court extended the "self-imposed hardship" rule as a basis to deny rezoning or a variance where the "*legal* conditions imposed on the property [that caused the hardship] were all brought about by the direct efforts of [the] plaintiff and [the] plaintiff's predecessor in title." *Id*.

In *Wolverine Commerce, LLC v Pittsfield Charter Twp*, 483 Mich 1023, 1024 (2009) (*Wolverine II*), our Supreme Court disagreed, concluding the self-imposed hardship rule did not bar the property owners from obtaining a variance. The Court declined to expand the self-imposed hardship rule to instances where the owners created a legal status on the property that rendered it unfit for the uses for which it was zoned. *Id*. The Court held, "There is no legal precedent to extend the self-imposed hardship rule to prevent a plaintiff who personally sought to conform the property's zoning classification to the municipality's master plan in the first instance from later seeking, in good faith, to rezone the property to another classification to allow a different use." *Id*. Instead, the rule precluded relief when the property owner "subdivided or physically altered the land so as to render it unfit for the uses for which it is zoned, not to cases in which the legal status of the property has been altered." *Id*.

In this case, the City claims IO bought the property knowing full well there was a billboard ban in effect, and therefore, any hardship was caused by IO's own actions. In contrast, IO and the BZA argue that IO did not physically alter the property in such a way as to create the hardship at issue. Given the circumstances in this case, we conclude the BZA's decision to grant the hardship variance was supported by competent, substantial, and material evidence in the record. There is no evidence in the record that IO did anything but purchase the property, and as the circuit court aptly explained, a landowner may seek any variance the law permits and should not be limited just because they purchased the piece of property knowing the City's ordinances barred a particular use. Indeed, this is a similar business risk the plaintiff in *Wolverine I* and *Wolverine II* took when he purchased land zoned industrial with the hope that he could later get the property rezoned. Unlike *Johnson*, *Bierman*, *Cryderman*, and *Janssen*, the hardship here was not caused by the landowner's actions. IO simply purchased the property at a time when there was no permitted reasonable use and took a business risk that the BZA would grant a variance to erect the billboard in the overlay zone.

Importantly, there was no evidence in the record that suggests a previous title owner partitioned the property at all. In fact, the only reference to the parcel's history suggests that it has had the same unique shape and size since well before the 1999 ordinance was enacted. Counsel for IO represented to the BZA that he had researched as far back as the 1950s and could not determine how the property came to be in its current state. Thus, unlike the partition cases of *Johnson* and *Cryderman*, where the zoning ordinance was clearly in existence before the landowner created his own hardship, what little we know about the history of this parcel suggests its unique shape was not "rendered unadaptable to any reasonable use" until the ordinance was enacted in 1999. As stated in *Wolverine II*, the self-imposed hardship rule "precluded relief when the property owner subdivided or physically altered the land so as to render it unfit for the uses for which it is zoned." There is no evidence that this occurred here.[4]

The BZA did not abuse its discretion when it concluded the self-imposed hardship rule was inapplicable under these circumstances and then granted the variance. There is no evidence that the property owner or the predecessor in title took actions after the enactment of the overlay zone that in some way physically altered the land so as to render it unfit for the use for which it is zoned. *Wolverine II*, 483 Mich at 1024. Thus, the use variance was properly granted because IO proved an unnecessary hardship meriting relief under MCL 125.3604(7).

As a final point, the dissent concludes that IO created its hardship when it purchased the property with knowledge of the overlay. As support, the dissent cites a Michigan Supreme Court case and claims that "a purchaser's foreknowledge of a zoning ordinance may be highly relevant, depending on whether the zoning ordinance is otherwise reasonable and the egregiousness of the purchaser's intended violation of that ordinance." See *Jones v Devries*, 326 Mich 126; 40 NW2d 317 (1949). The cited case does not support the dissent's conclusion here.

In *Jones*, our Supreme Court addressed whether the zoning board violated a Grand Rapids hardship relief ordinance when it granted the defendant's request for a variance to build an apartment complex in an area zoned for residential use. *Jones*, 326 Mich at 128, 136. The hardship ordinance at issue gave the zoning board the authority to grant a use variance if "the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone." *Id*. at 137. The *Jones* Court concluded that the zoning board erred because the land could yield a reasonable return through other means allowed in that zone. *Id*. The Court stated, when considering the "plight caused by restrictions in the zoning ordinance, it is somewhat important

---

[4] The City urges this Court to adopt the rule set forth in *Massasauga Rattlesnake Ranch, Inc v Hartford Twp Bd of Zoning Appeals*, unpublished opinion of the Court of Appeals of Ohio, issued March 26, 2012 (Docket Nos. 2011-T-0060 and 2001-T-0061). The Ohio Court of Appeals stated the following rule: "A party purchasing property with knowledge of zoning restrictions cannot claim unnecessary hardship caused by those restrictions for the purposes of a [sic] obtaining a use variance." *Id*. at 4. *Massasauga*, as an out-of-state opinion, is not binding on this Court, *Great Lakes Soc v Georgetown Charter Twp*, 281 Mich App 396, 414; 761 NW2d 371 (2008), and furthermore, our own precedent's analysis of the self-created hardship rule, starting with *Johnson*, is clearly distinguishable from Ohio's analysis.

to note that [the] defendants purchased their interest in this parcel . . . with full knowledge of this zoning ordinance which was previously adopted." *Id*. (quotation marks omitted). While this fact was "somewhat important," the Court's decision ultimately turned on the fact that "[t]here [was] no showing of a loss of yield of 'reasonable return' if [the] defendants are required to develop and use their present properties within the terms of the existing ordinance." *Id*. at 138. In this case, there was no reasonable economic use for the property allowed under the already-existing zoning ordinances. Our Supreme Court in *Jones* did not address whether the self-created hardship rule would apply in that context, and its proclamation that knowledge of the ordinance is "somewhat important" does not change the result in this case.

The dissent also cites *Faucher v Gross Ile Twp Bldg Inspector*, 321 Mich 193, 195; 32 NW2d 440 (1948), a case where the property owners attempted to obtain a permit to build a home on their lot. Due to the dimensional restrictions in the applicable zoning ordinance, it was "impossible" to erect a "practicable building" on the lot. *Id*. at 198. The defendants refused to issue the permit because the plaintiffs had notice of the zoning ordinance when they purchased the property, claiming the plaintiffs should have purchased the adjoining lots as well. *Id*. at 199. The Court stated that "[a]s to the contention that [the] plaintiffs purchased with notice of and subject to the restrictions contained in the ordinance, [the] defendants' argument presupposes that the ordinance is valid and reasonable with respect to [the lot]." *Id*. The Court did not find that the harm at issue was self-created; instead, it concluded that the defendants' refusal to issue the permit, considering the zoning ordinance's effect on the property, was "unreasonable and arbitrary." *Id*. at 199-200. Thus, at most, this case supports the conclusion that IO's purchase of the property with knowledge of the ordinance does not preclude the BZA from granting the use variance. For these reasons, the BZA did not err when it granted the use variance based on economic hardship.

Affirmed.


/s/ Thomas C. Cameron
/s/ Jonathan Tukel

-11-