*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CROOKED LAKE YACHT CLUB INC,

        Plaintiff-Appellee,

v

EMMET COUNTY and EMMET COUNTY ZONING BOARD OF APPEALS,

        Defendants-Appellants.

UNPUBLISHED
February 18, 2026
1:52 PM

No. 372425
Emmet Circuit Court
LC No. 23-108032-AA

Before: SWARTZLE, P.J., and REDFORD and ACKERMAN, JJ.

PER CURIAM.

This case involves the Crooked Laked Yacht Club (CLYC) and its request for a dimensional variance to build a patio under a tent within the waterfront setback established by ordinance. Emmet County, through its Zoning Board of Appeals (collectively referred to as the ZBA), denied CLYC's request for the variance in part because CLYC had begun construction of the patio before requesting the variance. CLYC appealed the ZBA's decision to the trial court. After remanding the case back to the ZBA for clearer findings, the trial court subsequently reversed the ZBA's decision and granted the variance.

The ZBA now appeals, arguing that the trial court did not apply the proper standard of review and CLYC did not provide evidence to meet each standard for a dimensional variance. Because the ZBA's findings did not demonstrate that its decision was based on substantial evidence or proper application of the law, the trial court did not err when it reversed the ZBA's decision. We therefore affirm.

## I. BACKGROUND

CLYC requested a waterfront setback variance to allow a ground patio to be located within 19.5 feet of Crooked Lake, which was within the 25-foot waterfront setback required by ordinance. In its application for the variance, CLYC stated that it had constructed a permeable patio under an existing tent to solve persistent draining issues and to accommodate class sizes for youth sailing classes. The application was received following enforcement action when the patio was found to have been installed closer to the shoreline than what the County's ordinances allowed. Prior to

the patio, CLYC's use of property already did not conform to the ordinances because of the location of the clubhouse, but because the clubhouse predated the ordinance be several decades, the original non-conforming use was legal.

The ZBA denied CLYC's application for the variance; CLYC then appealed the denial to the trial court. The trial court remanded the case back to the ZBA for reconsideration and to set forth clearer reasoning for its decision. On remand, the County's zoning administrator provided the ZBA with an overview of the case and mentioned that discussions occurred with CLYC about options that did not require a variance. A board member of CLYC also presented evidence at the meeting, including that the building and lot configuration existed before the ordinance, the size and placement of the tent had been there for many years, the patio could not be altered without significantly reducing its functionality, a smaller tent and patio could not fully accommodate the needs of the sailing school, and that the patio needed to be larger than the tent for water runoff. Additionally, the meeting packet provided to ZBA members included letters from CLYC in which it argued that the patio in a different location would cause a loss of seating and disrupt the designed flow of foot traffic. Members of the public who supported CLYC's variance request spoke at the meeting and sent letters to the ZBA, which were included in the meeting packet.

After the ZBA members discussed their individual positions, the ZBA as a collective board then made its findings and ultimately denied CLYC's variance because it found Standards 1, 2, and 3 for "practical difficulty" were not met.[1] The trial court then reversed the ZBA's decision, finding that, for each Standard, the ZBA either applied the wrong legal standard or made unreasonable findings. This appeal followed.

## II. ANALYSIS

### A. STANDARD OF REVIEW

"Any party aggrieved by a decision of the zoning board appeals may appeal to the circuit court for the county in which the property is located." MCL 125.3605; MCL 125.3606(1). Section 22.11.2(C) of the Emmet County's Zoning Ordinances provides that "[g]round decking and patios without railings and which are less than eighteen (18) inches above the natural grade at the deck building line may extend into the setback area, but not nearer to the shoreline than twenty-five (25) feet." But a person may apply for a variance in a zoning ordinance, which is a "modification of the literal provision of the Zoning Ordinance which would cause practical difficulty owing to circumstances unique to the individual property." Emmet County Zoning Ordinances, § 2.01. The ZBA may grant a dimensional variance "so that the spirit of the zoning ordinance is observed, public safety secured, and substantial justice done," MCL 125.3604(7), "but only in cases where the applicant demonstrates in the official record of the public hearing that practical difficulty exists," Emmet County Zoning Ordinances, § 25.04.3. There are five standards in the ordinance

---

[1] On appeal, the ZBA references the comments of individual board members as if these comments were the board's official findings and conclusions. These comments were not incorporated in the ZBA's official findings and conclusions. It is the ZBA's actual findings and conclusions made as a collective body that this Court reviews. See *JS Beck Rd LLC v Charter Twp of Northville*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367958); slip op at 7.

that must be met to show that "practical difficulty" exists; all parties agree that only Standards 1-3 are at issue here.

On appeal, the ZBA argues that the trial court applied the wrong standard of review when it overturned the ZBA's decision and that CLYC did not demonstrate that a practical difficulty existed according to the standards provided by ordinance. When reviewing the trial court's decision in an appeal from a zoning board, the trial court and ZBA's factual findings are given "great deference." *Risko v Grand Haven Charter Twp Zoning Bd of Appeals*, 284 Mich App 453, 458; 773 NW2d 730 (2009). The Court reviews de novo the trial court's decision in an appeal from a zoning board, as well as the underlying interpretation and application of an ordinance. *City of Detroit v City of Detroit Bd of Zoning Appeals*, 326 Mich App 248; 254 926 NW2d 311 (2018).

Our Supreme Court has provided that "[w]hen reviewing a decision of a zoning board of appeals, a circuit court's review is limited to whether the decision is authorized by law and supported by competent, material, and substantial evidence on the whole record." *Pegasus Wind, LLC v Tuscola Co*, 513 Mich 35, 44; 15 NW3d 108 (2024), quoting *Dowerk v Charter Twp of Oxford*, 233 Mich App 62; 592 NW2d 724 (1998) (cleaned up). MCL 125.3606(1) further expands on whether a decision is authorized by law:

> The circuit court shall review the record and decision to ensure that the decision meets all of the following requirements:
>
> (a) Complies with the constitution and laws of the state.
>
> (b) Is based upon proper procedure.
>
> (c) Is supported by competent, material, and substantial evidence on the record.
>
> (d) Represents the reasonable exercise of discretion granted by law to the zoning board of appeals.

For the trial court's determinations regarding the ZBA's factual findings, the Court reviews for clear error and assesses whether the trial court "applied correct legal principles and whether it misapprehended or grossly misapplied the substantial evidence test." *Pegasus Wind*, 513 Mich at 45 (cleaned up). Clear error occurred if the Court, reviewing the whole record, "is left with the definite and firm conviction that a mistake has been made." *Hughes v Almena Twp*, 284 Mich App 50, 60; 771 NW2d 453 (2009). "Substantial evidence is evidence that a reasonable person would accept as sufficient to support a conclusion," requiring more than a scintilla of evidence but may be substantially less than a preponderance. *Pegasus Wind*, 513 Mich at 44-45. If there is substantial evidence to support the ZBA's decision, then the trial court may not substitute its own discretion and "set aside findings [of fact] merely because alternative findings also could have been supported by substantial evidence on the record." *Hughes*, 284 Mich App at 72.

When reviewing an administrative decision like the one here, the findings of fact must be "sufficiently detailed so that we can separate the facts it found from the law it applied, and that conclusory findings are inadequate because we need to know the path it has taken through the conflicting evidence, the testimony it has adopted, the standards followed and the reasoning used to reach its conclusion." *Woody v Cello-Foil Prod*, 450 Mich 588, 594; 546 NW2d 226 (1996), quoting *Kostamo v Marquette Iron Min Co*, 405 Mich 105, 136; 274 NW2d 411 (1979). Further,

"the findings of fact must include as much of the subsidiary facts as is necessary to disclose the steps by which the [factfinder] reached its ultimate conclusion on each factual issue. The findings should be made at a level of specificity which will disclose to the reviewing [body] the choices made as between competing factual premises at the critical point that controls the ultimate conclusion of fact." *Woody*, 450 Mich at 595.

## B. STANDARD 1—NOT SELF-CREATED

The County's ordinance provides the following Standard 1 that an applicant must meet to show that the proposed practical difficulty was not self-created:

> That the practical difficulty was not created by an action of the applicant or property owner (self-created); and either existed at the time of adoption of the requirement from which the zoning variance is requested, or is necessary as the result of governmental action such as a road widening. [Emmet County Zoning Ordinances, § 25.04.3(A)(1).]

The ZBA made the following findings on Standard 1:

> The evidence in this case clearly shows that the practical difficulty is self-created. The completed footprint of the patio clearly encroaches into the required waterfront setback. Furthermore, as the appellant has submitted detailed explanation in verbal and written form to their reasoning why zoning regulations were not followed prior to construction does not absolve the appellant from their responsibility. The creation aspect of the practical difficulty is clearly supported by the actions and/or inactions of the appellant. The arguments that invoke the temporary tent structure are invalid and cannot support the footprint of the subject patio. A temporary tent structure has no setback requirements under the Emmet County Zoning Ordinance and theoretically could be placed anywhere on the subject property subject to building department approval therefore Standard 1 is not met.

The trial court did not err when finding "that the ZBA applied the wrong law in their analysis" for the self-creation standard. A ZBA "must deny a variance on the basis of the self-created hardship rule when a landowner . . . partitions, subdivides, or somehow physically alters the land *after the enactment of the applicable zoning ordinance*, so as to render it unfit for the uses for which it is zoned." *City of Detroit Bd of Zoning Appeals*, 326 Mich App at 261 (emphasis added). If the problem was caused by the landowner's own doing, not as a result of the zoning ordinance, then the practical difficulty was self-created.

Here, the ZBA found that the practical difficulty was self-created because CLYC had constructed the patio before seeking the variance. For this standard, it is critical to focus on what the property owner actually claims in terms of a "practical difficulty." Put another way, the "practical difficulty" to be analyzed under Standard 1 depends critically on context—i.e., what is the claimed "practical difficulty" advanced by the property owner? In some cases, the claimed practical difficulty might be based on the cost of tearing down and cleaning up an already constructed structure. In other cases, the claimed practical difficulty might be based on unique attributes of the land, including the placement of a building that preexisted the zoning ordinance and therefore was grandfathered in as a preexisting nonconforming use. And in some cases—like the present one—the property owner's claim of practical difficulty might be based on both.

-4-

To the extent that CLYC argues that the cost of tearing down and cleaning up the patio would be cost prohibitive, that "practical difficulty" was created by the yacht club. It is undisputed that CLYC constructed the patio without first obtaining a variance, and therefore it should have anticipated the risk that it would not receive one and the associated tear-down/clean-up costs.

Here, based on the findings stated by the ZBA in its minutes, the ZBA seemed to find practical difficulty was self-created solely because CLYC applied for the variance after the patio was constructed. For this standard, the ZBA made the following factual findings: the footprint of the patio encroached the setback, appellant submitted an explanation for why regulations were not followed prior to construction, and the "inactions of the appellant." These findings all implicate CLYC applying for the variance after the construction. Thus, to the extent that the ZBA found that CLYC failed on Standard 1 with regard to any tear-down costs, this conclusion accords with the law and evidence presented.

But the ZBA did err by largely ignoring CLYC's other major claim of practical difficulty. Specifically, CLYC also argued that its clubhouse footprint predated the applicable ordinances, the clubhouse was properly considered a preexisting nonconforming use of the real property, and the clubhouse's proximity to the lake meant that any acceptably sized patio next to that clubhouse would be nonconforming and require a variance. In other words, CLYC argued that it was the proximity of the clubhouse to the lake—a fact that preexisted the adoption of the applicable ordinances—that required the patio to be constructed where and how it was.

Viewed in the context of where the clubhouse was located and the unique circumstances of the land where the patio was to be located—all of which predated the 25-feet zoning requirement—CLYC introduced substantial evidence in the record that this practical difficulty was not self-created. The building location and lot size were set before the ordinances were enacted. Based on these pre-existing conditions, if CLYC built a patio in the same size and location as requested, it necessarily would encroach on the waterfront setback. And CLYC introduced evidence that the patio had to be of that size and at that location. (Whether the evidence was, in fact, sufficient to show such necessity was subject to Standard 2.) Thus, in this respect, the ZBA decision for Standard 1 was based on neither sound application of the law nor competent, material, and substantial evidence. As a result, the trial court did not err when it found that, if the ZBA had reviewed the request as if the patio had not been built, the standard would have been met because of the grandfathered building, location, lot size, and configuration.

## C. STANDARD 2—UNREASONABLY PREVENT USE OR UNNECESSARILY BURDENSOME

For Standard 2, the property owner must show that "strict compliance with the regulations governing area, setback, frontage, height, bulk density or other dimensional requirements" will either "unreasonably prevent the property owner from using the property for a permitted purpose" or "render conformity with those regulations unnecessarily burdensome." Emmet County Zoning Ordinances, § 25.04.3(A)(2). The ZBA found the following when examining Standard 2:

> That strict compliance to the ordinance will not unreasonably prevent owner from using the property for the permitted purpose. The growth of the club or an increase in the size of events or participants is not a given justification for the granting of a dimensional variance. Surface preferences can be subject to ordinance standards.

In this case, while the constructed patio is a change in surface detail, it nonetheless is a structural entity that comes under the auspices of the Zoning Ordinance. As stated by the appellant, this area has been used for a number of years and the absence of a patio did not preclude the owner from using the property or produce a burden great enough to prevent the use of the property. Regardless of the functional or aesthetic value an improvement may have the dimensional aspect referred to in the Ordinance does have merit and value therefore standard 2 is not met.

The record indicates that the ZBA failed to consider the second prong of Standard 2. The ZBA's findings focused on the first prong without any consideration of whether compliance would be an unnecessary burden. The only mention by the ZBA of the term "burden" is in the context of a burden so great as "to prevent the use of the property." But Standard 2 can be satisfied by showing *either* prong: (a) unreasonably prevent use, or (b) unnecessarily burdensome. Therefore, the ZBA's findings on this standard did not represent a "reasonable exercise of discretion." MCL 125.3606(1)(d).

And as the trial court found, CLYC introduced substantial evidence that it would be unnecessarily burdensome to comply with the ordinance. Specifically, CLYC introduced evidence that a patio of a different size or in a different location that complied with the ordinance would be unnecessarily burdensome based on foot traffic, water runoff, and the needs of the sailing classes, regardless of the current tent location and costs associated with moving it. Therefore, the trial court did not err when finding Standard 2 was met.

## D. STANDARD 3—SUBSTANTIAL JUSTICE

Standard 3 requires "the requested zoning variance is the minimum variance necessary to do substantial justice to the applicant as well as to other property owners in the district." Emmet County Zoning Ordinances, § 25.04.3(A)(3). For Standard 3, the ZBA found the following:

> The fact that there are alternative dimensional scenarios for the construction of a patio within the setback requirements is evident. A minimal variance tied to the footprint of the tent cannot be argued since the tent structure does not fall under the same setback regulations. In addition, the Emmet County Zoning Administrator had given a few scenarios to the appellant following the first hearing in January 2023 that would allow them to modify the constructed patio to comply with the required ordinance standards, therefore Standard 3 is not met.

The ZBA found that Standard 3 was not met because there were alternative scenarios within the setback that would have complied with the ordinances. It is not clear from the record what precisely these alternatives were. Regardless, it appears that the alternative scenarios did not meet CLYC's needs, which were supported in the record.

Substantial justice is not defined in the ordinance. MCL 125.3604(7) allows the ZBA to grant a variance "so that the spirit of the zoning ordinance is observed, public safety secured, and substantial justice done." The purpose of the waterfront setback provisions is "to protect surface water resources and flood plains from adverse construction or alteration," including the following:

> A. Avoid excessive structural encroachment of the natural waters and waterways, except uses traditionally depending upon direct water access.

-6-

B. Promote high water quality through encouragement of an undisturbed natural area to trap nutrients and sediment from entering natural waters, and prevent erosion. It is suggested that a minimum shoreline greenbelt of 35 feet be maintained.

C. Protect the natural environment of streams and lakes for wildlife habitat purposes and to preserve, to the extent practical, the natural image of landscapes. [Emmet County Zoning Ordinances, § 22.11.1].

The ZBA did not make any findings that the variance would not further the purpose of the waterfront setback. Further, community members showed their strong support for the requested variance, and the ZBA's final findings do not demonstrate that the ZBA considered whether the variance would have been necessary to do substantial justice to surrounding property owners, which is an aspect of Standard 3: "That the requested zoning variance is the minimum variance necessary to do substantial justice to the applicant *as well as to other property owners in the district*." Emmet County Zoning Ordinances, § 25.04.3(A)(3) (emphasis added).

Therefore, the trial court correctly concluded that the ZBA's decision on Standard 3 was not a reasonable exercise of discretion. Further, the trial court, when reviewing the record evidence, appropriately considered that the patio allowed for improved drainage, which was consistent with the intent of the ordinance. Unlike the ZBA, the trial court properly analyzed the criteria when it found that Standard 3 was met.

Affirmed.

/s/ Brock A. Swartzle
/s/ James Robert Redford
/s/ Matthew S. Ackerman

-7-